Stephen A. Tuggy (SBN 120416)
stuggy@lockelord.com
Michelle C. Ferrara (SBN 248133)
mferrara@lockelord.com
Kelly S. Biggins (SBN 252515)
kbiggins@lockelord.com
LOCKE LORD LLP
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Tel: (213) 485-1500
Fax: (213) 485-1200

Attorneys for Plaintiff
FIRST RESORT, INC.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST RESORT, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS HERRERA, in his official capacity as City Attorney of the City of San Francisco; BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO; and THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | Case No. CV 11-5534<br><br>**FIRST RESORT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Motion to Dismiss Hearing<br>Date: May 8, 2012<br>Time: 1:00 p.m.<br>Dept: Courtroom of the Hon. Saundra B. Armstrong |

1

**TABLE OF CONTENTS**

I.       INTRODUCTION ....................................................................................................................1

II.      STANDARD OF REVIEW ON A MOTION TO DISMISS ...................................................3

III.     DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S VOID-FOR-
         VAGUENESS CLAIM IS WITHOUT MERIT. ....................................................................4

         A.       The Ordinance is Impermissibly Vague ....................................................................5

         B.       Defendants' Reliance on Section 17500 is Misplaced................................................7

IV.      DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S EQUAL
         PROTECTION CLAIM IS WITHOUT MERIT. ....................................................................9

         A.       First Resort Has Alleged That The Ordinance Burdens A Fundamental Right
                  Triggering Strict Scrutiny Review. .........................................................................10

         B.       Even if Rational Basis Review Were Somehow Applied, Judgment Could Not
                  Be Rendered Under a 12(b)(6) Motion. ...................................................................12

V.       DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S PREEMPTION
         CLAIM IS WITHOUT MERIT. ............................................................................................13

VI.      CONCLUSION.....................................................................................................................15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA, 90071-3119**

1

**Table of Authorities**

2

Page(s)

3

**State Cases**

4

*Abbott v. City of Los Angeles*,
    53 Cal.2d 674 (1960) ............................................................................................................15

5

*Bernardo v. Planned Parenthood Fed'n of Am.*,
    115 Cal.App.4th 322 (2004) ..............................................................................................8, 9

6

7

*O'Connor v. Super. Ct.*,
    177 Cal.App.3d 1013 (1986) ..............................................................................6, 8, 9, 14, 15

8

9

*People v. Super. Ct. (Caswell)*,
    46 Cal.3d 381 (1988) ..............................................................................................................4

10

*In re Portnoy*
    21 Cal.2d 237, 131 P.2d 1 (1942) ...................................................................................13, 14

11

12

*Rezec v. Sony Pictures Entm't, Inc.*,
    116 Cal.App.4th 135 (2004) ................................................................................................14

13

*Sherwin-Williams Co. v. City of Los Angeles*,
    4 Cal.4th 893 (1993) ...................................................................................................3, 13, 14

14

15

16

**Federal Cases**

17

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004).............................................................................................................10

18

19

*Buckey v. County of Los Angeles*,
    968 F.2d 791 (9th Cir. 1992) ................................................................................................3

20

*Church of Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993)..............................................................................................................13

21

22

*City of Boerne v. Flores*,
    521 U.S. 507 (1997)..............................................................................................................10

23

*City of New Orleans v. Dukes*,
    427 U.S. 297 (1976)................................................................................................................9

24

25

*Connally v. Gen. Const. Co.*,
    269 U.S. 385 (1926)................................................................................................................4

26

27

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................................4

28

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

*Gitlow v. People of New York*,
   268 U.S. 652 (1925)..................................................................................................9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)..................................................................................................5

*Hearns v. Terhune*,
   413 F.3d 1036 (9th Cir. 2005) ...............................................................................3, 4

*Hill v. Colorado*,
   530 U.S. 703 (2000)................................................................................................2, 4

*Lovell v. City of Griffin*,
   303 U.S. 444 (1938)..................................................................................................9

*Planned Parenthood of Southeastern Pa. v. Casey*,
   505 U.S. 833 (1992)................................................................................................10

*Reno v. Flores*,
   507 U.S. 292, 302 (1993).........................................................................................10

*Riley v. Natl. Fed'n of the Blind of North Carolina, Inc.*,
   487 U.S. 781 (1988)................................................................................................11

*Sagana v. Tenorio*,
   384 F.3d 731 (9th Cir. 2004) ..................................................................................3, 9

*Smith v. California*,
   361 U.S. 147 (1960)..................................................................................................9

*Turner Broad. Sys. v. FCC*,
   512 U.S. 622 (1994)................................................................................................11

*United States v. Lopez-Flores*,
   63 F.3d 1468 (9th Cir. 1995) ....................................................................................9

*United States v. Playboy Entm't Group, Inc.*,
   529 U.S. 803 .............................................................................................................10

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982)...................................................................................................4

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)..............................................................................................9, 10

/ / /

/ / /

/ / /

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

**Statutes**

California Business and Professions Code section 2271 .................................................................14

California Business and Professions Code section 17200 ..........................................................8, 15

California Business and Professions Code section 17500 ...............................2, 3, 7, 8, 13, 14, 15

California Penal Code, section 330a.............................................................................................14

Federal Rule of Civil Procedure 8(a)(2) .......................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1, 2, 3, 4, 12

**Ordinance**

San Francisco Adminstrative Code, ch. 93, sections 93.1-93.5............................................ passim

OPPOSITION TO MOTION TO DISMISS

1    **I.      INTRODUCTION**

2         The Board of Supervisors for the City and County of San Francisco adopted an ordinance

3    entitled the "Pregnancy Information Disclosure and Protection Ordinance" (the "Ordinance"),

4    effective as of December 4, 2011.  S.F. Admin. Code, ch. 93, §§ 93.1-93.5 (Compl. Ex. 1).  Plaintiff

5    First Resort, Inc. filed this action challenging the constitutionality of the Ordinance on four grounds:

6    violation of First Resort's free speech rights based on viewpoint discrimination (Count I); violation

7    of First Resort's free speech and due process rights based on the chilling effect of the Ordinance's

8    vague terms (Count II); violation of First Resort's right to equal protection (Count III); and state law

9    preemption (Count IV).  Defendants' 12(b)(6) motion (the "Motion") does not address Count I but

10   contends that Counts II through IV fail to allege facts sufficient to state a claim.  For the reasons

11   explained below, Defendants' motion is without merit and should be denied.

12        First Resort is a non-profit organization that provides information and related medical

13   services, free of charge, to pregnant women who are considering the abortion option.  (Compl. ¶ 1.)

14   The core of what First Resort does is, therefore, non-commercial speech regarding matters that are

15   both highly private and the subject of vigorous debate in the public square.  The purpose of the

16   Ordinance is to destroy or minimize First Resort's ability to communicate its ideas to its intended

17   audiences.  (Compl. ¶¶ 19-20.)  Defendants designed the Ordinance to accomplish this objective by,

18   among other things, imposing unconstitutionally vague restrictions on First Resort's speech;

19   authorizing Draconian penalties for any violation, no matter how trivial; and denying First Resort

20   equal protection by exempting those with differing messages and viewpoints from the Ordinance,

21   purposefully to create a seriously unbalanced playing field.  (Compl. ¶¶ 29-35.)

22        In Count II, First Resort has alleged facts sufficient to state a claim that the Ordinance is

23   unconstitutionally vague.  The Ordinance, which is attached to the Complaint, is impermissibly

24   vague in virtually every material respect.  It fails to define the scope of a pregnancy service center's

25   speech that is regulated, what speech will be deemed "misleading," what statements about its

26   services contain an "omission" resulting in an "impliedly offered" service that is actually not

27   provided, who may be penalized for a violation, and what "per violation" means.  (Compl. ¶¶ 25, 30,

28   34, and 43; Compl. Ex. 1.)  As will be shown below, the Ordinance is void for vagueness both

*Locke Lord LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA, 90071-3119*

1

1    because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand

2    what conduct it prohibits" and it "authorizes or even encourages arbitrary and discriminatory

3    enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

4         Defendants' argument that the Ordinance mirrors California Business and Professions Code

5    section 17500 ("Section 17500") actually makes First Resort's point.  While Section 17500 may not

6    be impermissibly vague in the *commercial* context, California courts have found Section 17500

7    inapplicable to *non-commercial* speech expressly recognizing that the statute would be

8    unconstitutionally vague if used to regulate non-commercial speech.  Where, as here, the ordinance

9    has an inhibiting effect on speech, the courts apply a more stringent void-for-vagueness test under

10   which the Ordinance fails.   In addition, First Resort will show below that Defendants, when drafting

11   the Ordinance, added a number of terms to the text they copied from Section 17500 that make the

12   Ordinance even more impermissibly vague.

13        In Count III, First Resort has alleged facts sufficient to state a claim that the Ordinance

14   violates First Resort's rights to equal protection.  As alleged in the Complaint, the Ordinance

15   classifies pregnancy service centers based on their speech (i.e., whether they refer clients to abortion

16   providers) and their conscience (i.e., whether they refuse to perform abortions or refer clients to

17   abortion providers as a matter of conscience).  (Compl. ¶¶ 19-24, 27, 29-31, and 47-48.)  Both are

18   classifications based on fundamental rights and are, as such, subject to strict scrutiny.  That is,

19   Defendants must show (1) an actual compelling government interest that would justify the

20   classifications in the Ordinance; (2) the Ordinance is narrowly tailored to its purported goals; and,

21   (3) no less restrictive means exist for achieving those goals.  Defendants will not be able to satisfy

22   this standard, and certainly cannot do so in a 12(b)(6) motion.

23        Defendants contend the statutory classification at issue is "based on what health or health-

24   related services" are offered, which they argue "does not implicate any suspect classification."

25   (Motion, p. 8, lines 23-24.)  Whether the classification is based on speech, conscience, or "what  . . .

26   health-related services they offer" is an issue not suited for decision in a 12(b)(6) motion.  For the

27   purposes of the 12(b)(6) motion, First Resort's allegations that the classification is based on free

28   speech rights and the right of conscience (i.e., the right of a health care provider not to participate in

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA,  90071-3119

2

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1  abortions) trigger the application of strict scrutiny, which Defendants cannot satisfy.  Moreover,

2  even if the rational basis standard applied, which it does not, Defendants cannot establish a rational

3  basis for the classification in a 12(b)(6) motion.  First Resort is entitled to prove the Ordinance does

4  not satisfy the strict scrutiny standard, or even the rational basis standard advocated by Defendants.

5  Finally, to the extent Defendants contend First Resort's speech is "commercial," and further

6  contend that the Ordinance is constitutional as applied to commercial speech, the Ordinance is

7  clearly preempted by Section 17500.  Defendants admit the Ordinance copied the text of that statute.

8  (Motion, p. 5, lines 11-12.)  Under California law, when a local ordinance "duplicates" a state

9  statute, the ordinance is preempted.  *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893,

10  897-98 (1993).  If Defendants contend the Ordinance extends Section 17500 by applying that law to

11  non-commercial speech, then the Ordinance is unconstitutionally vague, as explained above.  In

12  addition, the Ordinance would be preempted in any event because Defendants are attempting to

13  regulate in an arena the state Legislature has, for First Amendment reasons, intentionally left

14  unregulated by Section 17500.

15  **II.      STANDARD OF REVIEW ON A MOTION TO DISMISS**

16  The Federal Rules of Civil Procedure require that a complaint include "a short and plain

17  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

18  intent of Rule 8(a)(2) is to require that the complaint give fair notice to defendant of what plaintiff's

19  claim is and the grounds upon which it rests.  *Sagana v. Tenorio*, 384 F.3d 731, 736-737 (9th Cir.

20  2004) ("all that is required is that the plaintiff give 'fair notice' of the claim and its basis. […] A

21  party need not plead specific legal theories, so long as the other side receives notice as to what is at

22  issue in the case").  In reviewing a motion to dismiss under Rule 12(b)(6), courts must accept as true

23  the allegations of the complaint in question, and construe the pleading in the light most favorable to

24  the plaintiff.  *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  Civil rights

25  complaints are to be liberally construed.  *Buckey*, 968 F.2d at 794.

26  The issue is not whether a plaintiff will ultimately prevail, but whether it is entitled to offer

27  evidence to support its claims.  *Hearns v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005).  "Indeed it

28  may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the

1  test." *Id*.  A complaint should not be dismissed under 12(b)(6) if there is "a reasonably founded

2  hope that the [discovery] process will reveal relevant evidence."  *Dura Pharm., Inc. v. Broudo*, 544

3  U.S. 336, 374 (2005) (citations omitted).

4  **III.      DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S VOID-FOR-**

5  **VAGUENESS CLAIM IS WITHOUT MERIT.**

6          "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails

7  to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

8  prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."

9  *Hill*, 530 U.S. at 732; *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

10  489, 498-499, 503 (1982); *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391-393 (1926).  Where, as

11  here, an ordinance has a potentially inhibiting effect on speech, the Court will apply a more strict

12  vagueness test:

13              [P]erhaps the most important factor affecting the clarity that the Constitution

14              demands of a law is whether it threatens to inhibit the exercise of constitutionally

15              protected rights.  If, for example, the law interferes with the right of free speech or

16              of association, a more stringent vagueness test should apply.

17  *Vill. of Hoffman Estates*, 455 U.S. at 498-499; *see also People v. Super. Ct. (Caswell)*, 46 Cal.3d

18  381, 391 n.2 (1988).  The purpose of the vagueness doctrine is to protect free speech by providing

19  clear notice to those subject to government edicts what speech is prohibited and what speech is

20  permitted:

21              It is a basic principle of due process that an enactment is void for vagueness if

22              its prohibitions are not clearly defined. Vague laws offend several important

23              values. First, because we assume that man is free to steer between lawful and

24              unlawful conduct, we insist that laws give the person of ordinary intelligence

25              a reasonable opportunity to know what is prohibited, so that he may act

26              accordingly. Vague laws may trap the innocent by not providing fair warning.

27              Second, if arbitrary and discriminatory enforcement is to be prevented, laws

28              must provide explicit standards for those who apply them.  A vague law

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

4

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    impermissibly delegates basic policy matters to policemen, judges, and juries

2    for resolution on an ad hoc and subjective basis, with the attendant dangers of

3    arbitrary and discriminatory application.  Third, but related, where a vague

4    statute abut(s) upon sensitive areas of basic First Amendment freedoms, it

5    'operates to inhibit the exercise of (those) freedoms.  Uncertain meanings

6    inevitably lead citizens to steer far wider of the unlawful zone . . . than if the

7    boundaries of the forbidden areas were clearly marked.

8    *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) (internal citations and quotations

9    omitted).  The Ordinance violates these basic principles of due process as described below.

10    **A.      The Ordinance is Impermissibly Vague**

11    The key provisions of the Ordinance are those that define a "violation" (Ord. § 93.4) and

12    those that proscribe "penalties" for violations (Ord. § 93.5(c)).  Both provisions are impermissibly

13    vague.

14    First, as Defendants' own briefing illustrates, a person of ordinary intelligence cannot

15    determine the scope of regulated speech.  The Ordinance states that it extends to "any statement,

16    concerning [pregnancy-related] services" that is "disseminated before the public in the City" or

17    "disseminated from the City before the public anywhere."  (Ord. § 93.4(a).)  In Defendants' motion,

18    they erroneously characterize the scope of the Ordinance as a regulation of only "advertising" (*e.g.*

19    Motion, p. 2, line 21).  By its terms, however, the Ordinance could apply to virtually any speech by

20    First Resort, including statements made to its financial supporters for fundraising purposes,

21    statements made to legislative bodies relating to matters of interest to First Resort, statements made

22    in interviews by the press, and the list could go on.  The only mention of "advertising" in Section

23    93.4(a) is a passing reference to an "advertising device."  That Defendants apparently believed the

24    Ordinance was limited only to "advertising" (as if even that term is sufficiently clear) shows persons

25    of "ordinary intelligence," such as Defendants, are not clear about what the Ordinance actually says.

26    Second, a person of ordinary intelligence cannot determine the scope of what speech will be

27    deemed "misleading."  According to the Ordinance, it is violated by "any statement . . . concerning

28    any circumstance or matter of fact connected with the proposed performance or disposition [of

5

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    pregnancy-related services] which is . . . misleading." (Ord. § 93.4(a).)  If First Resort states in a

2    public meeting of supporters that it provides "state-of-the-art" ultrasound services but the machine

3    used is not the most recent technology, has First Resort just violated the Ordinance?  This is but one

4    example of thousands where the breathtaking sweep of the Ordinance sweeps in obviously protected

5    speech that should never be the subject of prosecution, but which could be used as a basis for the

6    City Attorney to trigger the application of the Ordinance and its Draconian penalty provisions.  In

7    addition, the Ordinance has no materiality or reliance requirement – any statement, no matter how

8    trivial, can be used as a basis for prosecution.

9              Third, a person of ordinary intelligence cannot possibly know what speech is regulated when

10    the Ordinance makes it unlawful for a regulated pregnancy service center to, by "omission," engage

11    in a "plan or scheme with the intent not to perform the services . . . impliedly offered . . . ."  (Ord.

12    § 93.4(a) and (b).)  When is it that a pregnancy service center "impliedly" offers a service by failing

13    to state it does not provide the service?  For example, if a pregnancy service center has a street sign

14    at its office that states "Pregnancy Services Available Here," does that "impliedly" offer abortions

15    and is it misleading to fail to state in the sign, "But Not Abortions"?  Again, the permutations of a

16    prohibition based on "omission" and "impliedly offered" services are legion and it is impossible to

17    determine from the Ordinance which statements will be violations and subject to prosecution.[1]

18              Fourth, a person of ordinary intelligence cannot know who might be punished by the

19    Ordinance's "penalty" provisions.  While the Ordinance purports to regulate only "limited services

20    pregnancy centers," the penalty provision allows Defendants to "recover civil penalties from each

21    and every party responsible for the violation . . . ."  (Ord. § 93.5(c).)  Again, just by way of example,

22    if a regulated pregnancy service center retains a public relations firm to prepare materials for

23    dissemination to the public regarding the services provided and the City Attorney deems the

24    materials "misleading," is the public relations firm a "responsible" party?  Whatever the answer

25

26    [1]  The terms "misleading" and "impliedly" are themselves subjective and elusive in meaning.  What
      may be "impliedly offered" or "misleading" to one person may not be so considered by another. *See*
27    *O'Connor v. Super. Ct.*, 177 Cal.App.3d 1013, 1019 (1986) ("[A]n action under Business and
      Professions Code only requires that a statement be 'unfair' or 'misleading.'  These are subjective
28    concepts, which vary according to the political viewpoint of the listener.")

OPPOSITION TO MOTION TO DISMISS

1   might ultimately be, the risk of such a determination will deter public relations firms from working

2   with regulated pregnancy centers.  This same problem extends to volunteers, employees, Board

3   members, and other constituents of regulated pregnancy service centers.

4        Fifth, a person of ordinary intelligence cannot know the meaning of the Ordinance's penalty

5   provision, which provides for a "per violation" penalty of between $50 and $500.  In the non-

6   commercial speech context, what is a "per violation" penalty?  Defendants can certainly point to no

7   statute or ordinance anywhere where such a restriction on non-commercial speech has been

8   constitutionally imposed.  For example, if the "misleading" statement is in a flyer, is the "per

9   violation" penalty imposed for each time the flyer is handed to a member of the public?  If the

10  "misleading" statement is a on a web page, is it the number of times that web page was visited?  If

11  the statement is in a YouTube video, is it the number of times users clicked on the video?

12       While each of these ambiguities, among others, in the Ordinance creates broad restrictions on

13  speech, the parameters of which a person of ordinary intelligence cannot know, they also carry the

14  vice of allowing arbitrary and discriminatory enforcement, a particular danger for First Resort in this

15  case.  (Compl. ¶ 14 and Ex. 2.)  Because the scope of potentially regulated speech is so undefined,

16  includes "omissions" and what is being said by implication ("impliedly"), with no materiality

17  requirement whatsoever, the City Attorney could attack a regulated pregnancy service center using

18  the Ordinance for virtually any statement the pregnancy service center makes to any members of the

19  "public," with which the City Attorney disagrees, about abortion, pregnancy, pregnancy services, or

20  any other number of related subjects.  In addition, the City Attorney can arbitrarily target the penalty

21  provisions of the Ordinance at any number of individuals associated with a regulated pregnancy

22  service center, depending on how punitive the City Attorney (and his political allies) seek to be.

23      **B.**     **Defendants' Reliance on Section 17500 is Misplaced.**

24       Defendants argue the Ordinance is not void for vagueness because its terms are "almost

25  identical" to Section 17500, which Defendants say courts have enforced, "finding no vagueness

26  problem."  (Motion, p. 5, line 20.)  Defendants further cite a string of cases where false advertising

27  statutes governing commercial speech were deemed sufficiently clear to pass constitutional muster.

28  (*Id*. at pp. 5-7.)  By focusing on commercial speech, Defendants have missed the point.

*Locke Lord LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA,  90071-3119*

OPPOSITION TO MOTION TO DISMISS

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    First Resort has alleged its speech is *non-commercial* (*e.g.*, Compl. ¶ 21).  While Section

2    17500 may be constitutional as applied to commercial advertising, it most certainly would not be

3    constitutional if applied to non-commercial speech.  *O'Connor*, 177 Cal.App.3d at 1019.  In

4    *O'Connor*, the plaintiff brought a claim against election opponents alleging the defendants had

5    violated California Business and Professions Code sections 17200 and 17500 by attributing false

6    statements regarding plaintiff to well-known persons.  The Court of Appeal held Sections 17200 and

7    17500 did not apply to non-commercial speech and doing so would render them unconstitutional:

8             It should be noted that if the statutes were held to apply to the political arena,

9             their broad sweep would probably render them fatally defective.  Sections

10            17200 *et seq.* and ***17500 et seq. provide no standards by which First***

11            ***Amendment conduct is to be regulated***.  Because the statutes are not narrowly

12            drawn to reflect a considered legislative judgment concerning the scope of

13            permissible regulation of political speech, it appears the statutes were not

14            designed to regulate conduct in a political campaign.

15   *Id*. (emphasis added).  *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal.App.4th 322 (2004)

16   is instructive.  In *Bernardo*, plaintiffs asserted a claim under Sections 17200 and 17500 that Planned

17   Parenthood – an exempted entity under the Ordinance – had made false and misleading statements

18   regarding the safety of abortion.  The Court of Appeal rejected the application of Sections 17200 and

19   17500 to Planned Parenthood because its speech was non-commercial:

20            Bernardo cannot show a probability of prevailing on the merits of her claims

21            because her own evidence shows Planned Parenthood's challenged speech

22            regarding the central disputed issue of whether induced abortion causes breast

23            cancer was *noncommercial speech* entitled to full First Amendment

24            protection, and thus was not actionable under Business and Professions Code

25            sections 17200 or 17500.

26   *Id*. at 343 (emphasis added).  Thus, if First Resort were to disseminate statements asserting abortion

27   increased the incidence of breast cancer, the City Attorney could very well seek to prosecute First

28   Resort under the Ordinance, while under *Bernardo*, Planned Parenthood could make statements on

OPPOSITION TO MOTION TO DISMISS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1  the exact same subject to the contrary, completely unregulated.  This risk of discriminatory

2  enforcement brings us to the Ordinance's equal protection problem.[2]

3  **IV.    DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S EQUAL PROTECTION**

4  **CLAIM IS WITHOUT MERIT.**

5         Equal protection claims are assessed using a two-step analysis.  First, the plaintiff must show

6  that the statute or ordinance in question "results in members of a certain group being treated

7  differently from other persons based on membership in that group."  *United States v. Lopez-Flores*,

8  63 F.3d 1468, 1472 (9th Cir. 1995).  Both First Resort and Defendants agree the first step of the

9  analysis is satisfied:  the Ordinance creates a classification that results in the regulation of pregnancy

10  service centers that do not perform or refer for abortions and exempts from regulation all pregnancy

11  service centers that either perform abortions or refer to abortion providers.

12         Second, the court must determine "the legitimacy of a discriminatory statute under the

13  appropriate level of scrutiny."  *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004).  The highest

14  level of scrutiny, known as "strict scrutiny," applies where a statute or ordinance discriminates on

15  the basis of a fundamental right.  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a

16  classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions

17  such as race, religion, or alienage, our decisions presume the constitutionality of the statutory

18  discriminations and require only that the classification challenged be rationally related to a

19  legitimate state interest."); *Washington v. Glucksberg*, 521 U.S. 702, 719-721 (1997) ("heightened

20  protection" extended to certain fundamental rights; i.e., those that are "deeply rooted in this Nation's

21  history and tradition" and "implicit in the concept of ordered liberty" such that "neither liberty nor

22  justice would exist if they were sacrificed").  Freedom of speech is one such protected "fundamental

23  right."  *Gitlow v. People of New York*, 268 U.S. 652, 666 (1925); *Lovell v. City of Griffin*, 303 U.S.

24  444, 450 (1938); *Smith v. California*, 361 U.S. 147, 149-150 (1960).  First Resort also contends its

25

26  [2]  First Resort notes that Defendants' attempt to argue for a lenient vagueness standard on the ground
the Ordinance does not impose criminal liability (Motion, p. 4, lines 22-26) is wrong, both because

27  under *O'Connor* and *Bernardo* the touchstone for application of the more stringent standard is
whether the speech is commercial or non-commercial, and also because the Ordinance's penalty

28  provisions are so vague (as explained above) they could be applied in a more severe way than even a
violation of many criminal laws.

9

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    right of conscience not to participate in abortions is an additional fundamental right implicated by

2    the Ordinance. *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992) ("At

3    the heart of [the] liberty [protected by the Fourteenth Amendment] is the right to define one's own

4    concept of existence, of meaning, of the universe, and of the mystery of human life.  Beliefs about

5    these matters could not define the attributes of personhood were they formed under compulsion of

6    the State."); *Glucksberg*, 521 U.S. at 720 (in addition to enumerated freedoms protected by Bill of

7    Rights, the "liberty" specially protected by the Due Process Clause includes, among other things,

8    rights to marry, have children, direct the education and upbringing of one's children, marital privacy,

9    use contraception, bodily integrity, and abortion).

10          To satisfy strict scrutiny, Defendants must show (1) an actual compelling government

11   interest that would justify the Ordinance; (2) the Ordinance is narrowly tailored to its purported

12   goals; and, (3) no less restrictive means exist for achieving those goals.  *United States v. Playboy*

13   *Entm't Group, Inc.*, 529 U.S. 803, 813, 817; *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004);

14   *Glucksberg*, 521 U.S. at 720-721 (fundamental right may not be infringed "at all, no matter what

15   process is provided, unless the infringement is narrowly tailored to serve a compelling state

16   interest") (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).  Defendants' burden is "the most

17   demanding test known to constitutional law."  *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)

18   (superseded by statute on other grounds).  Based on the allegations of the Complaint, the Ordinance

19   discriminates on the basis of, and burdens, fundamental rights, triggering strict scrutiny.  Defendants

20   have, for good reason, not even attempted to satisfy that test.

21          **A.      First Resort Has Alleged That The Ordinance Burdens A Fundamental Right**

22                  **Triggering Strict Scrutiny Review.**

23          Defendants argue that First Resort's Complaint "fails to identify the fundamental right

24   allegedly burdened by the Ordinance."  (Motion, p. 7, lines 24-25.)  Defendants' argument is so far

25   off the mark it can only be because they failed to recognize that First Resort's equal protection claim

26   (Count III) incorporates by reference paragraphs 1 through 37, 39 through 41, and 43 through 45, of

27   the Complaint.  (Compl. ¶ 46.)  First Resort has clearly alleged that the classifications in the

28   Ordinance burdens its fundamental rights of free speech and conscience.

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA, 90071-3119**

1    The Ordinance burdens free speech by imposing broad and burdensome regulation of the

2    speech of pregnancy service centers based entirely upon what those centers do or do not say to their

3    clients.  Specifically, if a pregnancy service center states to its clients where those clients can obtain

4    abortions, then the pregnancy service center is exempt from the Ordinance and unregulated.  If, on

5    the other hand, a pregnancy service center refuses to make such a statement to its clients, then the

6    pregnancy service center is subject to the Ordinance.  (Compl. ¶ 4 at p. 3, lines 18-20; and Ex. 1, pp.

7    4-5 (Ord. §§ 93.3 (f) and 93.4(a).)

8         Thus, the Ordinance creates a burden on those organizations, such as First Resort, who

9    exercise their First Amendment right <u>not</u> to speak. *Riley v. Natl. Fed'n of the Blind of North*

10   *Carolina, Inc.*, 487 U.S. 781, 796-798 (1988) ("[T]he First Amendment guarantees 'freedom of

11   speech,' a term necessarily comprising the decision of both what to say and what not to say." […]

12   "content-based regulation is subject to "exacting First Amendment scrutiny.""); *Turner Broad. Sys. v.*

13   *FCC*, 512 U.S. 622, 641-642 (1994) ("Government action that  . . . requires the utterance of a

14   particular message favored by the Government, contravenes this essential right" and, if content-

15   based, is subject to the "most exacting scrutiny").  Any pregnancy service center willing to refer

16   clients to abortion providers is, by virtue of that speech, completely exempt from the Ordinance.

17   Thus, while Planned Parenthood and First Resort compete in the same marketplace of ideas, Planned

18   Parenthood's speech is completely unregulated by the Ordinance while First Resort's speech is

19   subject to it because Planned Parenthood refers clients to abortion providers.

20        The Ordinance also burdens First Resort's right of conscience.  One reason First Resort does

21   not refer clients to abortion providers is First Resort's belief that abortion harms the mother and

22   father, their families, and the unborn child.  (Compl. ¶ 1.)  When First Resort refuses to refer clients

23   to abortion providers, it is exercising its right of conscience.  The Ordinance, however, discriminates

24   against and burdens the exercise of that right of conscience.  Under the Ordinance, any pregnancy

25   service center that will not refer clients to abortion providers is subject to burdensome regulation of

26   its speech.  If, on the other hand, the pregnancy service center's beliefs about abortion are such that

27   it is willing to perform abortions or refer clients to abortion providers, it is exempt.  The Ordinance

28

OPPOSITION TO MOTION TO DISMISS

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1   therefore burdens First Resort's right of conscience by making First Resort subject to the burdens of

2   the Ordinance simply because of the exercise of its right of conscience.  (Compl. ¶ 1.)

3          Thus, based on the allegations of the Complaint, the classifications in the Ordinance burden

4   both fundamental free speech rights and the right of conscience.  Strict scrutiny therefore applies.

5   Defendants have not even attempted to justify the Ordinance under strict scrutiny test because they

6   cannot do so.  Defendants have not even attempted to show there is any actual problem in need of

7   solving, that the curtailment of First Resort's fundamental rights is actually necessary to the solution,

8   or the absence of any less restrictive alternative.  As a result, Defendants' 12(b)(6) motion is without

9   merit.  In fact, as will be explained below, even if the Court were to apply a rational basis standard,

10  which it should not, the showing in Defendants' 12(b)(6) motion would fail.

11         **B.      Even if Rational Basis Review Were Somehow Applied, Judgment Could Not Be**

12                   **Rendered Under a 12(b)(6) Motion.**

13         Defendants contend the only relevant classification in the Ordinance is "between

14  organizations based on what health or health-related services they offer" and that such a

15  classification "does not implicate any suspect classification."  (Motion, p. 8, lines 24-25.)

16  Defendants are wrong.  Whether or not the Ordinance classifies in the manner proffered by

17  Defendants, it <u>also</u> classifies based on speech and conscience, as alleged in the Complaint and shown

18  above, triggering strict scrutiny.

19         Nonetheless, even if the Court were to apply the lowest level of scrutiny to a legislative

20  classification (*i.e*., the "rational basis test"), Defendants' 12(b)(6) motion would have to be denied.

21  Under the rational basis test, Defendants must show the *classification* made in the Ordinance has a

22  rational basis.  Defendants' 12(b)(6) motion fails even this test because Defendants only attempted

23  to show a rational basis for the Ordinance's *prohibition against misleading speech*, but provided no

24  rational basis for the *classification* made between pregnancy services centers that do provide

25  abortions and abortion referrals and those that do not.

26         Thus, Defendants argue in a variety of ways that the Ordinance's "prohibition on false and

27  misleading advertising" is intended to "prevent women from being delayed in exercising their

28  constitutional right to terminate a pregnancy" (Motion, pp. 9-10), but cannot explain why abortion

1  providers or organizations that refer clients to abortion providers should be exempted.  Just by way

2  of example, if an abortion provider promises same-day appointments in its advertising but when a

3  woman calls she is given an appointment seven days later and told the delay is harmless, the delay

4  experienced by that woman would be much longer than any delay possible at First Resort.  (Compl.

5  ¶ 18.)  *See Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993) ("A law

6  cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable

7  damage to that supposedly vital interest unprohibited.")

8       Defendants have not articulated any rational basis for exempting pregnancy service centers

9  that perform abortions or refer clients to abortion providers from the regulatory burden of the

10  Ordinance.  As First Resort has alleged, the exemption was made not to protect women, but to

11  protect those organizations whose speech is approved by Defendants.  (Compl. ¶¶ 18 and 27.)  There

12  is no rational basis for such a classification.

13  **V.**  **DEFENDANTS' MOTION TO DISMISS FIRST RESORT'S PREEMPTION CLAIM**

14         **IS WITHOUT MERIT.**

15       Defendants tacitly admit the Ordinance is preempted by Section 17500.  In their Motion,

16  Defendants state that "[t]he terms of the Ordinance are almost identical to those of the California

17  false advertising statute, Business and Professions Code section 17500."  (Motion, p. 5, lines 11-13.)

18  Under California law, when a City or County ordinance duplicates state law, the ordinance is

19  preempted:

20          If otherwise valid local legislation conflicts with state law, it is preempted by

21          such law and is void.  [Citations omitted.]  A conflict exists if the local

22          legislation duplicates, contradicts, or enters an area fully occupied by general

23          law, either expressly or by legislative implication.  [Citations omitted.]  Local

24          legislation is 'duplicative' of general law when it is coextensive therewith.

25          (*See In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1] [finding

26          'duplication' where local legislation purported to impose the same criminal

27          prohibition that general law imposed].

28  *Sherwin-Williams Co.*, 4 Cal.4th at 897-98 (internal quotations omitted).

OPPOSITION TO MOTION TO DISMISS

*Locke Lord LLP*
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    *In re Portnoy*, cited by the California Supreme Court in *Sherwin-Williams Co.,* is virtually

2    indistinguishable from this case.  There, Riverside County enacted a gaming control ordinance but

3    "[s]ubstantially the entire text of section 4 of the ordinance is found in Penal Code, section 330a." *In*

4    *re Portnoy*, 21 Cal.2d at 240.  As a result, the California Supreme Court found preemption:

5              Thus, the requirement is identical under both the statute and the ordinance

6              with respect to an essential element of the crime, the hazarding of money.  It

7              follows that section 4 of the ordinance results in an unconstitutional

8              duplication of section 330a of the Penal Code and is therefore invalid.

9    *Id*. at 241.  In the same way, as the Defendants admit, the text of the Ordinance has been lifted from

10   Section 17500.  The Ordinance is therefore preempted because it "trenches unlawfully on a field

11   reserved exclusively to the State of California."  (Compl. ¶ 51.)

12          Defendants appear to contend First Resort's speech is governed by Section 17500 by

13   operation of Business and Professions Code section 2271.  First Resort also expects Defendants may

14   contend First Resort's speech is "commercial," and therefore subject only to limited First

15   Amendment protection.  While for the purposes of this motion First Resort denies that Section 17500

16   applies to its speech, either through the operation of Section 2271 or because the Defendants claim

17   the speech is "commercial," to the extent Defendants claim First Resort's speech is "commercial" or

18   otherwise subject to Section 17500, the Ordinance is clearly preempted by Section 17500.

19          As explained above, Section 17500 does not apply to First Resort's speech because its speech

20   is non-commercial.  In *O'Connor*, the Court of Appeal concluded that Section 17500 was not

21   designed by the California legislature to regulate such speech.  *O'Connor*, 177 Cal.App.3d at 1019.

22   It is now well-settled that Section 17500 applies *only* to commercial speech.  *Rezec v. Sony Pictures*

23   *Entm't, Inc*., 116 Cal.App.4th 135, 140 (2004).  To the extent Defendants claim the Ordinance adds

24   to Section 17500 by extending it to non-commercial speech, then the Ordinance is both an

25   unconstitutional restriction of non-commercial speech and preempted by the California legislature's

26   intent to limit Section 17500's proscriptions to the commercial speech arena.

27          Finally, Defendants attempt to save the Ordinance from preemption by arguing First Resort

28   has asserted only a "facial" challenge to the Ordinance and that there exists a conceivable

OPPOSITION TO MOTION TO DISMISS

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1 application of the Ordinance to unlicensed pregnancy service centers (unlike First Resort) that would

2 not be preempted. Defendants are wrong on both counts. <u>First</u>, First Resort has asserted a pre-

3 enforcement preemption challenge, not a "facial" challenge. First Resort has standing to bring the

4 challenge to ascertain its rights and obligations under the Ordinance. Otherwise, First Resort would

5 be put to the risk of an imposition of the penalties provided by the Ordinance before knowing

6 whether the Ordinance is enforceable at all:

7         The theory of these cases was perhaps best expressed by Borchard in his book

8         on Declaratory Judgments (1934) where he pointed out (p. 278) that to

9         exclude examination of penal statutes from the operation of declaratory relief

10         is like 'telling the prospective victim that the only way to determine whether

11         the suspect is a mushroom or a toadstool is to eat it.' [Citations omitted.]

12 *Abbott v. City of Los Angeles*, 53 Cal.2d 674, 678, n. 2 (1960).

13     <u>Second</u>, Defendants' use of the Ordinance to extend Section 17500 into a field (non-

14 commercial speech by unlicensed pregnancy service centers) the California legislature intentionally

15 left unregulated does not save the Ordinance from preemption. In that circumstance, the Ordinance

16 conflicts with the California legislature's intentional limitation on the application of Section 17500

17 to non-commercial speech. *See O'Connor,* 177 Cal.App.3d at 1019 (Sections 17200 and 17500 "not

18 designed to regulate" non-commercial speech).

19 **VI.   CONCLUSION**

20     For the foregoing reasons, Defendants' motion to dismiss should be denied.[3]

21 Dated: February 23, 2012                  Respectfully submitted,
                                     LOCKE LORD LLP

22

23                                    By:   /s/ Stephen A. Tuggy
                                       Stephen A. Tuggy

24                                    Attorneys for Plaintiff FIRST RESORT, INC.

25

26

27 [3]  For reasons unclear to First Resort, Defendants asked this Court to take judicial notice of an ethics opinion by the American College of Obstetricians and Gynecologists for the truth of the matters asserted in the opinion. (Motion, p. 2, n. 2.) First Resort objects to the request. The ethics opinion

28 is inadmissible hearsay. The request for judicial notice, like the motion to dismiss, should be denied.

---

15