UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST RESORT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DENNIS J. HERRERA, in his official capacity as City Attorney of the City of San Francisco; BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO; and THE CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendants. | Case No: C 11-5534 SBA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Docket 12 |

Plaintiff First Resort, Inc. ("First Resort") brings the instant action to challenge the constitutionality of San Francisco's Pregnancy Information Disclosure and Protection Ordinance ("Ordinance"), S.F. Admin. Code, ch. 93, §§ 93.1-93.5. The Ordinance prohibits "limited services pregnancy centers" from making false or misleading statements to the public relating to their services. First Resort claims that the Ordinance burdens its right to free speech, and in particular, its ability to express anti-abortion views to women using its clinic. As defendants, First Resort has named the City and County of San Francisco, the San Francisco Board of Supervisors and San Francisco City Attorney Dennis J. Herrera (collectively "Defendants" or "the City"). The Court has jurisdiction under 28 U.S.C. § 1331.

The parties are presently before the Court on Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 12. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

On October 25, 2011, the San Francisco Board of Supervisors ("Board") passed the Ordinance, which amended the San Francisco Administrative Code by adding Chapter 93, sections 93.1 through 93.5. Compl. Ex. A., Dkt. 1-1. The new law, known as the Pregnancy Information Disclosure and Protection Ordinance, was signed into law by Mayor Edwin Lee on November 3, 2011, and took effect on December 4, 2011. Compl. ¶ 18, Dkt. 1. The Ordinance is aimed at ensuring that indigent women facing unexpected pregnancies are not harmed by false or misleading advertising by certain providers of pregnancy-related services. S.F. Admin. Code ("Ord.") §§ 93.3(f), 93.4.

The Ordinance is divided into five separate sections: (1) Title, id. § 93.1; (2) Findings, id. § 93.2; (3) Definitions, id. § 93.3; (4) Violation, id. § 93.4; and (5) Enforcement, id. § 93.5. According to the Findings, the impetus for the Ordinance is the concern that pregnancy clinics that oppose abortion, often referred to as "crisis pregnancy centers," have become common throughout California. Id. § 93.2(5). Though some of these centers readily acknowledge that they do not provide abortions or emergency contraception or referrals for the same, others do not—and intentionally seek to mislead women contemplating abortion into believing that their facilities offer abortion services and unbiased counseling. Id. § 93.2(6). From the City's perspective, such deception is harmful, especially to indigent woman facing unexpected pregnancies. For these particular women, time is of the essence, and even a few days of delay in accessing emergency contraception or abortion services can render less invasive options unavailable. Id. § 93.2(9).

To the address the problem of false or deceptive advertising by crisis pregnancy centers, the Ordinance prohibits the use of false or misleading advertising regarding the services offered by certain of those centers. This prohibition states as follows:

> SEC. 93.4. VIOLATION
>
> (a) It is unlawful for any limited services pregnancy center, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be made or disseminated before the public in the City, or to make or disseminate or cause to be made or disseminated from the City before the public anywhere, in any newspaper or other publication, or any advertising device or in any other manner or means whatever, including over the Internet, <u>any statement, concerning those services, professional or otherwise, or concerning any circumstance or matter of/act connected with the proposed performance or disposition thereof which is untrue or misleading, whether by statement or omission, that the limited services pregnancy center knows or which by the exercise of reasonable care should know to be untrue or misleading</u>.
>
> (b) It is unlawful for any limited services pregnancy center, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be so made or disseminated any such statement identified in subsection (a) as part of a plan or scheme with the intent not to perform the services expressly or impliedly offered, as advertised.

Id. § 93.4 (emphasis added).

The above provisions apply only to advertising by a "limited services pregnancy center," as opposed to a "pregnancy services center." Id. § 93.5(a).[1] A pregnancy services center refers to any facility, licensed or otherwise, whose primary purpose is to provide services to women who are or may be pregnant, that either (1) offers obstetric ultrasounds, obstetric sonograms or prenatal care to pregnant women, or (2) has the appearance of a medical facility (as determined by additional criteria). Id. § 93.3(g). A limited services pregnancy center is defined as a pregnancy services center (within the meaning of section 93.3(g)) "that does not directly provide or provide referrals to clients for the following services: (1) abortions; or (2) emergency contraception." Id. § 93.3(f).

---

[1] The Ordinance expressly states that it not intended to "regulate, limit or curtail" abortion-related advocacy. Ord. § 93.2(10).

The Ordinance may be enforced by the City Attorney through a civil action. Id. § 93.5. Prior to filing suit, the City Attorney must provide the limited services pregnancy center with written notice of the violation. Id. § 93.5(a). If the center does not respond or correct the violation within ten days, the City attorney may file suit against the limited services pregnancy center for injunctive relief, id. § 93.5(b), and/or civil penalties "of not less than fifty dollars ($50) and not more than five hundred dollars ($500) per violation," id. § 93.5(c).

### B. PROCEDURAL HISTORY

First Resort is a non-profit pregnancy counseling and health clinic which holds anti-abortion views. Compl. ¶ 1, Dkt. 1. On November 16, 2011, First Resort commenced the instant action in this Court seeking to invalidate the Ordinance on the grounds that it is unconstitutionally vague and violates its right to free expression. Id. ¶ 3. There is no allegation or indication, however, that First Resort has been the subject of any legal action by the City for having violated the Ordinance.

The Complaint alleges that the Ordinance: (1) infringes on the right to freedom of expression under the First and Fourteenth Amendment; (2) is void for vagueness; (3) violates the Equal Protection Clause of the United States Constitution; and (4) is impliedly preempted by California law. First Resort seeks injunctive and declaratory relief that the Ordinance is void and cannot be enforced. Compl. at 16. The City now moves to dismiss First Resort's second, third and fourth claims for relief, pursuant to Rule 12(b)(6). First Resort's first claim for freedom of expression is not at issue in the present motion.

## II. LEGAL STANDARD

### A. RULE 12(B)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a

Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

### B. CONSTITUTIONAL CHALLENGES

Generally, there are two types of constitutional challenges:  an as-applied challenge and a facial challenge.  See Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." Id.  In contrast, an ordinance may be facially unconstitutional in one of two ways: "either it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." Id. (internal quotations and alterations omitted).

There are two forms of facial challenges. Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1033 (9th Cir. 2006).  "First, a plaintiff seeking to vindicate

his own constitutional rights may argue that an ordinance is unconstitutionally vague or . . . impermissibly restricts a protected activity." Id. (internal quotation marks and citation omitted). "Second, an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court." Id. (internal quotation marks and citation omitted). First Resort's Complaint appears to be raising the first type of facial challenge.

## III. DISCUSSION

### A. VOID FOR VAGUENESS

First Resort's second claim for relief alleges that the Ordinance is unconstitutionally vague, and therefore, should be deemed void and unenforceable. "The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Roberts v. U.S. Jaycees, 468 U.S. 609, 629 (1984) (citation, internal quotation marks, and alteration omitted). In evaluating a vagueness challenge, "the principal inquiry is whether the law affords fair warning of what is proscribed." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 503 (1982). But "[t]he fact that [the Board] might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1975). Instead, a statute satisfies due process if it contains reasonable standards to guide the conduct in question. Id.

#### 1. Contentions

In the context of the instant motion, First Resort makes five arguments in support of its vagueness claim, which are discussed below.

##### a) Scope

As a threshold matter, First Resort contends that the Ordinance is vague on the ground that it potentially applies to any speech, and is not clearly limited to advertising.

- 6 -

Pl.'s Opp'n at 5, Dkt. 22.  In particular, First Resort focuses on section 93.4(a) of the Ordinance, which prohibits limited services pregnancy centers from making "any statement, concerning those services, professional or otherwise, or concerning any circumstance or matter of/act connected with the proposed performance or disposition thereof which is untrue or misleading . . . ."  According to First Resort, the statements regulated by the Ordinance are not expressly limited to advertising, and as such, the Ordinance conceivably could apply "to virtually any speech made by First Resort, including statements made to its financial supporters for fundraising purposes."  Id.

In evaluating a vagueness challenge, the Court construes the challenged language in the context of the entire law.  "[O]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity."  Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1021 (9th Cir. 2010) ("Brumsickle").  Thus, "vagueness challenges will be rejected when it is clear what the ordinance as a whole prohibits[.]"  Id. (internal quotations omitted, emphasis added).  In the Findings section, the Ordinance consistently states that its purpose is to prevent limited services pregnancy centers from engaging in "false and misleading advertising" regarding the nature of the counseling and services it provides or does not provide.  Ord. § 93.2(6), (7), (8), (9), (11) and (12) (emphasis added).  Likewise, in the Enforcement section, the Ordinance specifies that in the event the City believes that any limited services pregnancy center is in violation of the Ordinance, the City Attorney "shall give written notice of the violation" and indicate that "the limited services pregnancy center has ten (10) days in which to cure the false, misleading, or deceptive advertising."  Id. § 93.5(a) (emphasis added).[2]  In view of these provisions, which are ignored by First Resort, the Court finds that a person of common intelligence could discern that the conduct proscribed by the Ordinance is false and

---

[2] As for First Resort's claim that the Ordinance could apply to its fundraising efforts, it too fails to take into account that the Ordinance clearly states that it is not intended to curtail limited services pregnancy centers from exercising their right to engage in advocacy "against abortions."  Id. § 93.2(10).

misleading advertising, and not simply any statement made by the limited services pregnancy center.

### b) "Misleading"

First Resort next contends that a person of common intelligence cannot discern what type of speech is considered "misleading" under the Ordinance. Pl.'s Opp'n at 5-6. By way of example, First Resort posits that a misleading statement could encompass a representation "in a public meeting . . . that it provides 'state of the art' ultrasound services but the machine used is not the most recent technology." Id. at 6. This argument suffers from the same flaw as above; to wit, it fails to consider the context of the provisions of the Ordinance as a whole. The Ordinance plainly does not apply to any false or misleading advertising. Rather, as section 93.2 makes clear, the advertising targeted by the Ordinance specifically pertains to advertising that "mislead[s] women contemplating abortion into believing that their facilities offer abortion services and unbiased counseling." Ord. § 93.2(6). Obviously, a misleading statement by First Resort regarding whether its ultrasound machine is "state of the art" is not a representation concerning whether the limited services pregnancy center provides abortions.

### c) "Omission" and "Impliedly"

First Resort also takes issue with the terms "omission" and "impliedly" as they appear in section 93.4 of the Ordinance. Subsection (a) prohibits "any statement, concerning [the limited services pregnancy center], professional or otherwise, or concerning any circumstance or matter of/act connected with the proposed performance or disposition thereof which is untrue or misleading, whether by statement or omission, that the limited services pregnancy center knows or which by the exercise of reasonable care should know to be untrue or misleading." Id. § 93.4(a) (emphasis added). Subsection (b) separately prohibits "any statement identified in subsection (a) as part of a plan or scheme with the intent not to perform the services expressly or impliedly offered, as advertised." Id. § 93.4(b) (emphasis added).

- 8 -

First Resort argues that a person of common intelligence "cannot possibly know what speech is regulated when the Ordinance makes it unlawful for a regulated pregnancy service center to by 'omission' engage in a 'plan or scheme with the intent not to perform the services . . . impliedly offered . . . .'" Def.'s Opp'n at 6 (quoting in part Ord. § 93.4(a) and (b)). This contention lacks merit. First Resort ignores that the Ordinance is specifically directed at "statements" that are false or misleading. Ord. § 93.2(6). A statement may be false or misleading based on an affirmative misrepresentation in the statement. Id. § 93.4(b). In addition, a statement may be misleading due to the "omission" of information. Id. Thus, it is not an "omission" per se that is the focus of the Ordinance; rather, it is a <u>statement</u> which either incorrectly states or implies that services will be offered. Despite First Resort's assertions to the contrary, a person of common intelligence would be able discern what statements are regulated by the Ordinance.[3]

### *d)* *Penalty Provisions*

Section 93.5(c) of the Ordinance provides that "the City shall be entitled to recover civil penalties from each and every party responsible . . . ." Ord. § 93.5(c). Seizing upon the reference to "each and every party," First Resort claims that the Ordinance conceivably could be applied to parties beyond the limited services pregnancy center, such as a public relations firm representing the center. Pl.'s Opp'n at 6. Not so. The reference to "each and every party" in subsection (c) must be read in the context of the Ordinance as a whole, and the Enforcement section in particular. See Brumsickle, 624 F.3d at 1021. Subsection (a) expressly states that prior to filing suit, the City Attorney must provide written notice to the "limited services pregnancy center" accused of violating the Ordinance; if the center fails to

---

[3] In the context of the Ordinance, an omission may render a statement misleading, when, viewed in the context of the overall statement or representation, it creates the affirmative or implied impression that the limited pregnancy services center offers services that it, in fact, does not. Nonetheless, even if the meaning and application of the term "omission" were unclear to a person of common intelligence, that ipso facto does not render the Ordinance unconstitutionally vague. As the Supreme Court has recognized, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." Hill v. Colorado, 530 U.S. 703, 733 (2000) (internal quotations omitted).

respond or refuses cure the violation within ten days, the City Attorney may file a civil action against the limited services pregnancy center. Accordingly, the Court rejects First Resort's contention that the reference to "each and every party responsible" renders the Ordinance unconstitutionally vague.

### *e) Per Violation*

Finally, First Resort complains that the imposition of a civil penalty on a "per violation" basis is unclear. The Ordinance authorizes the City to pursue a civil action for injunctive relief and civil penalties against limited services pregnancy centers for violating its provisions. Ord. § 93.5. Civil penalties may be sought in an amount "not less than fifty dollars ($50) and not more than five hundred dollars ($500) per violation." Id. § 93.5(c). First Resort alleges that the term, "per violation," is vague, ostensibly because it is unclear how each violation will be determined.

The Court is not persuaded by First Resort's argument. Not only has First Resort failed to cite any legal authority to support its position that the civil penalty provision is impermissibly vague, it fails to address People v. Witzerman, 29 Cal. App. 3d 169 (1972), which is discussed extensively in the City's motion. In Witzerman, the court rejected a vagueness challenge to similar provision set forth in California Business and Professions Code § 17536. That section states that "[t]he court shall impose a civil penalty for each violation of this chapter [which includes section 17500]." Cal. Bus. and Prof. Code § 17536(b) (emphasis added). In rejecting the plaintiff's vagueness challenge to "each violation," the court explained:

> What constitutes a single violation of section 17500 for the purpose of imposing a civil penalty under section 17536 depends on the type of violation involved, the number of victims and the repetition of the conduct constituting the violation—in brief, the circumstances of the case. We find nothing unclear in the abstract with the provision. Similar ones appear quite generally throughout our codes with respect to misdemeanors. Whether an interpretation of this provision as made in a particular case is constitutional depends on whether the interpretation is reasonable or arbitrary.

Witzerman, 29 Cal. App. 3d at 179 (emphasis added). As such, the Court rejects First Resort's contention that "per violation" is unconstitutionally vague, and thus, GRANTS the City's motion to dismiss said claim.

### 2. Conclusion

When a claim is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). As set forth above, First Resort has failed to allege any compelling grounds for declaring the Ordinance void on the grounds of vagueness. Though it is questionable whether First Resort will be able to rectify this deficiency, the Court, out of an abundance of caution, will permit First Resort an opportunity to amend this claim should it desire to do so. Accordingly, the Court dismisses First Resort's second claim with leave to amend.

### B. EQUAL PROTECTION

First Resort's third claim for relief alleges a claim for violation of its right to equal protection under the Fourteenth Amendment. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Philips v. Perry, 106 F.3d 1420, 1424-25 (9th Cir. 1997). Laws alleged to violate the right to equal protection are subject to one of three levels of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis review. Clark v. Jeter, 486 U.S. 456, 461. A statute, regulation or ordinance that infringes upon a fundamental right or discriminates based on a suspect classification is reviewed with strict scrutiny, and will be upheld only where the law in question serves a compelling government interest. Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir. 2002). Intermediate scrutiny typically applies to classifications based on illegitimacy and gender. See Cleburne, 473 U.S. at 441. A classification fails intermediate scrutiny review unless it is substantially related to a sufficiently important governmental interest. Id. Where the law does not involve a suspect classification or burden a

1 fundamental right or trigger intermediate scrutiny, the rational basis test applies, and the
2 challenged law will be upheld "if the classification itself is rationally related to a legitimate
3 governmental interest." Dept. of Agriculture v. Moreno, 413 U.S. 528, 533 (1973); Perry v.
4 Brown, 671 F.3d 1052, 1082 (9th Cir. 2012).

5 The standard to be applied in assessing an equal protection challenge depends on the
6 nature of the classification at issue or the right burdened by the law. First Resort contends
7 that the Ordinance burdens its fundamental right to free speech, thereby triggering strict
8 scrutiny review. See Pl.'s Opp'n at 9-11. The City counters that there are no allegations in
9 the Complaint that the Ordinance burdens either a fundamental right or a suspect class, and
10 as a result, the Ordinance is subject to rational basis review. See Defs.' Reply at 5-6. The
11 Court disagrees with the City's first premise. The Complaint, in fact, alleges that the
12 Ordinance burdens First Resort's "fundamental rights." Compl. ¶ 48. Though no particular
13 fundamental rights are alleged in the equal protection claim, First Resort alleges elsewhere
14 in the pleadings that the Ordinance infringes upon its right to free speech. E.g., id. ¶¶ 3-5.
15 Those allegations are incorporated by reference into First Resort's third claim for equal
16 protection. See id. ¶ 46. As a result, the Court finds that First Resort has sufficiently
17 alleged the Ordinance implicates a fundamental right for purposes of its equal protection
18 claim. See Regan v. Taxation with Representation of Wash., 461 U.S. 540, 547 (1983)
19 (acknowledging that "freedom of speech" is a "fundamental right").[4] Since the City's
20 motion only discusses rational basis review, which is inapplicable to First Resort's equal
21 protection claim as alleged, the Court finds that the City has not presented a compelling
22 basis upon which to dismiss said claim.

23 In its reply brief, the City argues that to the extent that First Resort's equal
24 protection claim is predicated upon the fundamental right to free speech, such claim is

25

---

26 [4] First Resort also contends that its equal protection claim relies upon an alleged
"right of conscience." Pl.'s Opp'n at 4. However, First Resort cites no authority
27 supporting the existence of such a fundamental right, nor does it identify the provision of
the Constitution from which it allegedly emanates. Therefore, the Court construes First
28 Resort's claim as being predicated upon the fundamental right to free speech only.

1 duplicative of Count I, which alleges that the Ordinance violates the First Amendment. See
2 Defs.' Reply at 5. "It is well established that a district court has broad discretion to control
3 its own docket, and that includes the power to dismiss duplicative claims." M.M. v.
4 Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012). Nonetheless, this argument is
5 not properly before the Court, since the City failed to present it in its opening papers.
6 Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider
7 arguments raised for the first time in a reply brief.").

In sum, the City has failed to persuade the Court that dismissal of First Resort's equal protection claim is appropriate at this juncture. Accordingly, the Court DENIES the City's motion to dismiss First Resort's third claim for denial of equal protection. This ruling, of course, does not foreclose the City from challenging this claim in a subsequent dispositive motion under Rule 12 or Rule 56.

### C. PREEMPTION

"There are three types of conflict that give rise to preemption: A conflict exists if the local legislation [1] duplicates, [2] contradicts, or [3] enters an area fully occupied by general law, either expressly or by legislative implication." City of Claremont v. Kruse, 177 Cal.App.4th 1153, 1168 (2009) (internal quotations omitted).[5] "Local legislation is 'duplicative' of general law when it is coextensive therewith." Sherwin-Williams Co. v. City of Los Angeles, 4 Cal.4th 893, 898 (1993). "[L]ocal legislation is contradictory to general law when it is inimical thereto." Id. With regard to the third type of conflict preemption, local legislation is deemed to enter an area that is "fully occupied" by state law when the Legislature has either (1) expressly manifested its intent to fully occupy the area or (2) impliedly done so. Id.

Without identifying any statute in particular, the Complaint alleges that "[t]he Ordinance is impliedly preempted by state law because it entrenches unlawfully on a field

---

[5] "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const., art. XI, § 7.

reserved exclusively to the State of California." Compl. ¶ 51 (emphasis added). "There is a presumption against preemption," and, in particular, courts are "reluctant to invoke the doctrine of implied preemption." Garcia v. Four Points Sheraton LAX, 188 Cal.App.4th 364, 374 (2010). "Since preemption depends upon legislative intent, such a situation necessarily begs the question of why, if preemption was legislatively intended, the Legislature did not simply say so, as the Legislature has done many times in many circumstances." Id. (internal quotations and citation omitted). The California Supreme Court has thus identified three recognized "indicia of intent" for purposes of implied preemption:

> (1) [T]he subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality.

Am. Fin. Servs. Ass'n v. City of Oakland, 34 Cal.4th 1239, 1252 (2005) (internal quotations omitted).

In its opposition brief, First Resort continues to allege that the Ordinance is impliedly preempted by state law. Pl.'s Opp'n at 14. Yet, First Resort neither mentions nor offers any argument regarding the three recognized indicia germane to an implied preemption claim. Instead, First Resort now asserts that the Ordinance is preempted ostensibly because much of the text of the Ordinance "has been lifted [California Business and Professions Code § 17500]." Pl.'s Opp'n at 14.[6] This argument, however, is germane to preemption based on duplication of state law, as opposed to implied preemption. Since a claim of preemption based on the duplication of section 17500 is alleged nowhere in the

---

[6] "Section 17500 [also referred to as the "false advertising law"] is the major California legislation designed to protect consumers from false or deceptive advertising." People v. Superior Court (Olson), 96 Cal.App.3d 181, 190 (1979).

- 14 -

Complaint, such claim is not properly before the Court. See <u>Schneider v. Calif. Dep't of Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition motion, however, are irrelevant for Rule 12(b)(6) purposes."). Thus, given First Resort's failure to respond to the City's arguments for dismissal of the implied preemption claim, the City's motion to dismiss said claim is GRANTED. First Resort is granted leave to amend to allege a preemption claim based on duplication of state law; to wit, section 17500.

## IV. CONCLUSION

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Leave to amend is granted, as set forth above.

2. First Resort shall file its amended pleading within fourteen (14) days of the date this Order is filed, and the failure to file do so may result in the dismissal of the vagueness and preemption claims, with prejudice. <u>First Resort is advised that any additional factual allegations set forth in the amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11</u>.

3. The parties shall appear for a telephonic Case Management Conference on **November 8, 2012 at 3:00 p.m.** Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiff shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date. Plaintiff's counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559. NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

4. This Order terminates Docket No. 12.

IT IS SO ORDERED.

Dated:  September 26, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge