United States District Court
Northern District of California

FIRST RESORT, INC.,

        Plaintiff,

   v.

DENNIS HERRERA, et al.,

        Defendants.

Case No.: CV 11-5534 SBA (KAW)

ORDER REGARDING JOINT DISCOVERY LETTER BRIEFS

On November 26, 2013, this matter was referred to the undersigned for discovery purposes. On December 6, 2013, the parties filed three joint discovery letter briefs. The court held a hearing on the matter on January 2, 2014. At the conclusion of the hearing, the court ordered the parties to meet and confer to narrow the scope of their discovery disputes and ordered the defendants to file an amended privilege log. The parties have narrowed their discovery disputes as set forth in their most recent joint status report, to which the defendants' most current privilege log is attached. The parties now seek the court's assistance on three remaining issues. First, whether the defendants' assertions of privilege are proper. Second, whether the defendants' privilege log complies with the rules applicable to a *Vaughn* index. Third, whether the defendants' request for a protective order preventing the deposition of San Francisco City Attorney Dennis Herrera should be granted. For the reasons set forth below, the court orders the defendants to produce the documents listed in the amended privilege log for *in camera* review. The plaintiff's request to depose the City Attorney is denied. The defendants' request for a protective order preventing his deposition from taking place is granted.

## I.    BACKGROUND

The Board of Supervisors for the City and County of San Francisco ("Board of Supervisors") adopted the Pregnancy Information Disclosure and Protection Ordinance ("Ordinance") on October 25, 2011. (Amended Compl. ¶ 2.) The Ordinance, effective December

3, 2011, prohibits "limited services pregnancy centers" from making false or misleading statements to the public about the pregnancy-related services the centers offer or perform. S.F., CAL., ADMIN. CODE, ch. 93, §§ 93.1-93.5.

The purpose of the Ordinance is to protect indigent women facing unexpected pregnancies. *Id.* § 93.2.1. Underlying this purpose is the City's apparent belief that "time is a critical factor" for these women, who are at risk of losing their options when false and misleading advertising delays them from receiving the medical treatment they wish to pursue. *Id.* § 93.2(11)-(12). The specific prohibition in the Ordinance reads:

> (a) It is unlawful for any *limited services pregnancy center*, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be made or disseminated before the public in the City, or to make or disseminate or cause to be made or disseminated from the City before the public anywhere, in any newspaper or other publication, or any advertising device or in any other manner or means whatsoever, including over the Internet, any statement concerning those services, professional or otherwise, or concerning any circumstance or matter of/act connected with the proposed performance or disposition thereof which is untrue or misleading, whether by statement or omission, that the limited services pregnancy center knows or which by the exercise of reasonable care should know to be untrue or misleading.
>
> (b) It is unlawful for any *limited services pregnancy center*, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be made or disseminated any such statement identified in subsection (a) as part of a plan or scheme with the intent not to perform the services expressly or impliedly offered, as advertised.

S.F., CAL., ADMIN. CODE, ch. 93, § 93.4 (emphasis supplied).

The Ordinance regulates the communications of "limited services pregnancy centers." *Id.* A "limited services pregnancy center" is "a pregnancy services center . . . that does not directly provide or provide referrals to clients for . . . (1) abortions; or (2) emergency contraception." *Id.* § 93.3(f). In turn, a "pregnancy services center" is a "facility, licensed or otherwise . . . the primary purpose of which is to provide services to women who are or may be pregnant, that either (1) offers obstetric ultrasounds, obstetric sonograms or prenatal care to pregnant women, or (2) has the appearance of a medical facility." *Id.* § 93.3(g).

1    First Resort, Inc. ("First Resort") is a non-profit pregnancy counseling and state-licensed
2 health clinic. (Amended Compl. ¶ 1.) It offers free counseling and "certain free medical
3 services" to women, but it does not provide abortions or referrals for abortions. *(Id.)* First Resort
4 operates on the principles that "(i) abortion harms the mother and father, their families, and the
5 unborn child, and (ii) most women will choose options other than abortion when given
6 appropriate support, unbiased counseling, and accurate medical information." *(Id.)*
7    On November 16, 2011, First Resort commenced this action against Dennis Herrera, the
8 City Attorney for the City and County of San Francisco, the Board of Supervisors, and the City
9 and County of San Francisco (collectively, "Defendants" or "City"). (Compl., Dkt. No. 1.) First
10 Resort challenges the constitutionality of the Ordinance. (Amended Compl. ¶ 3.) It asserts that
11 the Ordinance infringes on its First Amendment right to free expression, as it discriminates on the
12 basis of viewpoint and specifically targets First Resort, the larger of all but two organizations
13 purportedly subject to the Ordinance. *(Id.* ¶¶ 17, 19.) First Resort contends that its speech is non-
14 commercial and thus fully protected under the First Amendment. *(Id.* ¶ 21.) It also challenges the
15 constitutionality of the Ordinance on Equal Protection grounds, asserting that the Ordinance
16 "regulates and restricts, under the threat of substantial penalties, expression by [pregnancy
17 services centers[1]] regarding the services they provide and the viewpoints they hold. These same
18 regulations do not apply to other organizations that provide pregnancy-related services, including
19 organizations that provide abortions or referrals for abortions." *(Id.* ¶ 47.)
20 //
21 //
22 //
23 //

---

[1] First Resort self-identifies as a "pregnancy resource center," which it defines as an organization "that provide[s] pregnancy-related services but that do[es] not perform abortions or provide referrals for abortion services." Amended Compl. ¶ 23. This differs from the terminology that appears in the Ordinance, which defines a "limited services pregnancy center" as a "pregnancy services center . . . that does not directly provide or provide referrals to clients for . . . (1) abortions; or (2) emergency contraception." S.F., CAL., ADMIN. CODE, ch. 93, § 93.3(f). To avoid confusion, the court employs the terminology that appears in the Ordinance.

## II.   DISCUSSION

**A.   The City's assertions of privilege**

### 1.   Deliberative process privilege

The deliberative process privilege protects documents from disclosure if they "reflect advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citation omitted).  The purpose of the privilege is to "promote frank and independent discussion among those responsible for making governmental decisions and also to protect against premature disclosure of proposed . . . policies or decisions." *Id.* (citations omitted).  The party seeking the privilege must establish (1) that the document at issue is "predecisional—it must have been generated before the adoption of [a] policy or decision" and (2) that the document is "deliberative in nature, containing opinions, recommendations, or advice about . . . policies [or decisions]." *Id.* (citation omitted).  "Purely factual material that does not reflect deliberative processes is not protected . . . . unless [it] is so interwoven with the deliberative material that it is not severable." *Id.* (citations omitted).

"The deliberative process privilege is a qualified one.  A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* (citations omitted).  In making this determination, the court should consider:  (1) the relevance of the evidence, (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.  *Id.* (citations omitted); *see also N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

First Resort challenges the City's assertions of the deliberative process privilege on four separate grounds.  (Joint Ltr. re: Additional Disc. Responses Sought From Defs. at 6, 7, Dkt. No. 53.)  First, it argues that in challenging the Ordinance as a mere pretext to chill speech, it has placed the government's intent at issue, rendering the deliberative process privilege inapplicable. (*Id.* at 6.)  Second, First Resort contends that the City's privilege log is insufficient in that it fails

4

to comply with the requirements applicable to a *Vaughn* index.[2] (*Id.* at 7.) Third, First Resort maintains that the City has improperly asserted the privilege with respect to particular items in the City's privilege log. (*Id.*) Fourth, First Resort argues that, even if the City has established that the materials at issue are privileged, it has made a showing sufficient to overcome the privilege. (*Id.*)

In support of its argument that the deliberative process privilege does not apply because the government's intent is at issue, First Resort cites to *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422 (D.C. Cir. 1998). In that case, the Bank of New England Corporation came under the heightened supervision of the Federal Reserve Board. *Id.* at 1423. The company filed for bankruptcy protection after the Comptroller of the Currency declared one of its subsidiaries, the Bank of New England, N.A., insolvent and appointed the FDIC as receiver. *Id.* The bankruptcy trustee brought suit pursuant to a Bankruptcy Code provision that authorized him to avoid transfers made "with actual intent to hinder, delay, or defraud . . . creditors." *Id.* He alleged that the FDIC, the Federal Reserve Board, and the Comptroller acted in concert and pressured the parent company's management to transfer millions of dollars in assets to the bank in order to reduce the losses the FDIC would incur as receiver. *Id.* The bankruptcy trustee moved to compel discovery responses from the Board and the Comptroller, who claimed certain materials were protected from disclosure under the deliberative process privilege. *Id.* The district court declined to compel disclosure of the materials. *Id.* It determined that the bankruptcy trustee could only overcome the privilege upon introducing evidence of the government's misconduct or upon satisfying a five factor balancing test showing a superior interest in the documents. *Id.*

On appeal, the D.C. Circuit agreed with the bankruptcy trustee's argument that the "deliberative process privilege is not appropriately asserted . . . when a plaintiff's cause of action turns on the government's intent." *Id.* at 1424. On the government's subsequent petition for rehearing, the D.C. Circuit clarified that this holding "is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation." *In re Subpoena Duces*

---

[2] A *Vaughn* index identifies each document to be withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of a document would damage the interest protected by the claimed exemption. *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991).

5

*Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998).

      First Resort's reliance on the D.C. Circuit's decision is misplaced.  Here, while First Resort has attempted to frame this case as one that turns on the propriety of the City's motives for enacting the Ordinance, the Supreme Court has instructed that "[i]t is a familiar principle of constitutional law that th[e] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). It follows, then, that the motive an individual legislator may have for voting on a particular piece of legislation is irrelevant in an action challenging the constitutionality of an enacted law. *Missouri Knights of Ku Klux Klan v. Kansas City*, 723 F. Supp. 1347, 1352 (W.D. Mo. 1989). Legislative motive is not the same as the legislative, or governmental, purpose behind a law. *Id.* "The latter is an essential inquiry in determining if a particular governmental restriction of speech is justified under the applicable rule of decision." *Id.*  In this inquiry, "[t]he relevant governmental interest is determined by objective indicators as taken from the face of the statute, the effect of the statute, comparison of prior law, facts surrounding enactment of the statute, the stated purpose, and the record of the proceedings." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984).

      Following these authorities, First Resort's attempt to question the constitutionality of the Ordinance in terms of the City's actual intent behind the legislation fails.  Consequently, the argument that the deliberative process privilege does not apply because the City's actual intent is at issue fails as well. *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency* involved a specific provision of the Bankruptcy Code that required the bankruptcy trustee to show that the transactions he sought to avoid as fraudulent transfers were made with "*actual intent to hinder, delay, or defraud*." *See* 145 F.3d at 1424 (emphasis supplied).  As explained above, such a showing of intent in this case is irrelevant.  Contrary to First Resort's contention, then, the deliberative process privilege remains available to the City, subject to a sufficiently detailed showing that its assertions of that privilege are appropriate.

On this point, First Resort initially noted that the City's original privilege log did "not list the basis for any information withheld . . . where the deliberative process privilege is claimed." (Joint Ltr. re: Additional Disc. Responses Sought From Defs. at 8.) During the January 2, 2014 discovery hearing, the court instructed the City to revise its privilege log in a manner consistent with the court's General Standing Order and in a manner that would support its assertions of privilege. At that time, the City indicated that it would amend its privilege log. Notwithstanding the court's instructions, and the court's General Standing Order, which advises litigants that the failure to furnish the specific basis for a claim of privilege may be deemed a waiver of that privilege, *see* General Standing Order ¶ 19(g), the City's amended privilege log is still insufficient.

First Resort reiterates its challenge with respect to the City's amended privilege log in the parties' most recent status report. (Feb. 4, 2014 Joint Status Rpt. at 3, Dkt. No. 73.) In that status report, the City also requests an *in camera* review of materials to the extent the court "lacks sufficient information to decide whether privilege has been properly asserted." *(Id.)* As the City represents that First Resort stipulated to an *in camera* review at the January 2, 2014 discovery hearing and in light of the deficiencies in the City's current privilege log, the court grants the request. *(Id.)* Given that *in camera* review is warranted in this case, the court need not decide whether the City's amended privilege log is insufficient because it fails to adhere to the requirements applicable to a *Vaughn* index.[3] The court, however, agrees that the amended privilege log is insufficient because it does not indicate the basis for the City's assertions of privilege nor does it sufficiently describe the documents in its amended privilege log or their subject matter. Descriptions such as "E-mail titled: 'CPC talking points[,]'" or "email titled: "Our

---

[3] During the January 2, 2014 discovery hearing, First Resort cited *Cal. Native Plant Soc'y v. U.S. EPA*, 251 F.R.D. 408 (2008) for the proposition that a *Vaughn* index is not limited to cases involving the Freedom of Information Act ("FOIA"). In that case, the court noted that "with minor exceptions," cases pertaining to disclosures under FOIA "are generally applicable to the discovery context." *Id.* at 411 n.1. The court did not, however, squarely hold that a *Vaughn* index is required to preserve deliberative process privilege claims in non-FOIA litigation. *Id.* Rather, the court determined that the government defendants had to supplement their privilege logs "with more detailed information as to how the documents [at issue] fit into the deliberative process privilege." *Id.* at 414.

1  materials on the Limited Service Pregnancy Center legislation[,]" even when viewed in light of
2  their corresponding subject matter, e.g., "Talking points and background information/e-mail
3  relating to Crisis Pregnancy Centers[,]" and "Draft response to inquiry regarding Limited Service
4  Pregnancy Centers[,]" lack a meaningful level of detail.  The court will therefore examine the
5  materials listed in the City's amended privilege log *in camera* to determine whether its claims of
6  the deliberative process privilege are appropriate.  Upon completing that review, the court will
7  then determine whether First Resort has made a showing sufficient to overcome that privilege.

8                    2.       <u>Attorney work-product and attorney-client privilege</u>

9    Plaintiff contends that the City's assertions of the attorney work-product doctrine and
10 attorney-client privilege are also improper.  (Joint Ltr. re: Additional Disc. Responses Sought
11 From Defs. at 8, Dkt. No. 51; Feb. 3, 2014 Joint Status Rpt. at 2-3.)  It directs this challenge at
12 two items in the City's amended privilege log.[4]  (Feb. 4, 2014 Joint Status Rpt. at 2-3.)  The first
13 item is an email titled "drey re cpcs.doc."  (*Id.*, Ex. A., Amended Privilege Log at 1.)  Deputy City
14 Attorney Erin Bernstein sent this email to Andrea Bruss, Supervisor Cohen's legislative aide.
15 (*Id.*)  The email contains information from Dr. Drey, an employee at San Francisco General
16 Hospital's Women's Options Center.  (*Id.*)  According to the City, the email footer "notes
17 attorney-client privilege and/or attorney work product privilege" and the message was not, to the
18 best of its knowledge, shared with anyone outside the City.  (*Id.*)  The second item at issue is an
19 attachment to that email, identified as a "[s]tatement from Dr. Drey."  (*Id.*)  Based on the
20 information in the amended privilege log, that statement describes a patient's experience at a crisis
21 pregnancy center.  (*Id.*)  As with the first item, the City indicates that the email footer "notes
22 attorney-client privilege and/or attorney work product privilege."  (*Id.*)  The City, however, does
23 not state that the document was not circulated to anyone outside the City.  (*See id.*)

---

[4] In the parties most recent joint status report, Plaintiff states:  "[r]egarding the attorney-client privilege, First Resort moves only as to items 1 and 2 on the revised privilege log (marked as REV-0025017 and REV[-]0025018[.]"  Feb. 4, 2014 Joint Status Rpt. at 2-3.  The court thus presumes that Plaintiff has conceded that the City's assertion of the attorney-client privilege as to any other item is appropriate and sufficient to protect those materials from disclosure.  This moots First Resort's argument respecting the deliberative process privilege where the City has asserted that privilege, in addition to the attorney-client privilege, as to any of those items.

8

Based on the limited information in the City's amended privilege log, it is not apparent that Ms. Berstein's email and Dr. Drey's statement are protected from disclosure under the attorney-client privilege or the attorney work-product doctrine. At a minimum, to the extent that Ms. Berstein's email or Dr. Drey's statement relays the facts surrounding a patient's experience at a crisis pregnancy center, the sharing of those facts with an attorney does not bring the entire communication within the ambit of the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). With respect to the attorney work-product doctrine, the information in the amended privilege log does not suggest that the documents were prepared in anticipation of litigation or for trial. *See* FED. R. CIV. P. 26(b)(3)(A); *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) ("To qualify for work-product protection, documents must (1) be prepared in anticipation of litigation or for trial . . . .") (internal quotations and citation omitted).

While it appears to the court that the City's assertion of the attorney-client privilege and the attorney work-product doctrine may be unavailing, the court will nonetheless examine these items as part of its *in camera* review. Once the court has completed its review, it will order production of these two items if appropriate.

**B.    The City's request for a protective order preventing the deposition of City Attorney Dennis Herrera**

On November 13, 2013, First Resort noticed the deposition of Dennis Herrera, in his official capacity as City Attorney. (Joint Ltr. re: Protective Order, Ex. A, Depo. Notice, Dkt. No. 53.) The City Attorney objected to the deposition notice. (Joint Ltr. re: Protective Order, Ex. B., Objection to Dep. Notice.) The City Attorney opposes First Resort's request to depose him on three separate grounds. (Joint Ltr. re: Protective Order at 1-2.) First, the City Attorney argues that the court can and should prohibit the deposition from taking place because First Resort failed to comply with Civil Local Rule 30-1, which requires that litigants meet and confer about scheduling prior to noticing the deposition of a party or witness.[5] (*Id.* at 2.) Second, the City

---

[5] Given that the parties have met and conferred since the filing of the respective joint letter, the court considers this argument moot. In addition, because the City prevails on the argument that

9

1   Attorney contends that, absent the requisite showing by First Resort, he cannot be deposed

2   because he is opposing counsel. (*Id.* at 2, 3.) Third, the City Attorney maintains that permitting

3   his deposition would be improper because he is a high ranking government official. (*Id.* at 4.) In

4   addition, the City Attorney alternatively requests that if the court permits the deposition, it should

5   take place only by written questions and/or on terms this court deems reasonable. *(Id.)*

6         First Resort contends that the City has no valid basis for preventing the deposition from

7   taking place. *(Id.)* It maintains that the City Attorney can be deposed as a fact witness and that

8   there is no blanket prohibition on deposing opposing counsel or high ranking government

9   officials. (*Id.* at 5, 9.)

10         Absent extraordinary circumstances, high government officials should not be deposed

11   regarding their reasons for taking official action. *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st

12   Cir. 2007); *see also United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (decision to permit

13   deposition of high government official threatened to undermine the integrity of the administrative

14   process); *Arizmendi v. City of San Jose,* No. C08-05163 JW (HRL), 2010 WL 14598867, at *3

15   (N.D. Cal. Apr. 7, 2010) (motion for protective order preventing deposition of police chief

16   granted where, among other things, plaintiffs did not counter defendants assertion that police

17   chief lacked unique personal knowledge about policies and customs). Depositions of high

18   ranking government officials may be permitted where the official has first-hand knowledge

19   related to the claim being litigated, provided that the party seeking discovery has shown that other

20   persons cannot provide the necessary information. *Bogan*, 489 F.3d at 423 (citations omitted).

21   "The reason for requiring exigency before allowing the testimony of [these] officials is obvious.

22   High ranking government officials have greater duties and time constraints than other witnesses."

23   *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993).

24         Here, even assuming that First Resort has shown that other persons cannot provide the

25   necessary information, it has made no showing of extraordinary circumstances. It has not

26   established that the City Attorney has first-hand knowledge related to the claims being litigated in

---

28   the City Attorney should not be deposed because he is a high ranking government official, the court does not address the remaining argument that his deposition is improper because he is opposing counsel in this case.

this action. First Resort contends that "[i]t cannot be rationally argued that Mr. Herrera lacks first[-]hand knowledge about the statements he made to the public in the Press Release (and related communications and his enforcement of the Ordinance." (Joint Ltr. re: Protective Order at 9.) This argument misses the mark. The threshold question is not whether a high ranking government official has first-hand knowledge of statements made or his particular role with respect to a specific piece of legislation. It is whether "the official has first-hand knowledge related to the claim being litigated." *Bogan*, 489 F.3d at 423. In this case, the court is not persuaded that the City Attorney has any such first-hand knowledge. The more likely scenario is that any knowledge the City Attorney has regarding the claims being litigated derives from briefing provided by support staff, summaries from counsel handling the litigation on a day-to-day basis, or other outside sources. This falls short of the first-hand knowledge which could potentially justify his deposition, however brief, in this case.

As First Resort has failed to make the requisite showing, its request to depose the City Attorney is denied, and the City's request for a protective order preventing that deposition is granted.

### III. CONCLUSION

For the reasons set forth above, the court hereby orders as follows:

1. The City shall produce all of the materials listed in its amended privilege log for *in camera* review. The materials shall be properly indexed with Bates numbers and tabbed so that they are easily identifiable to the corresponding privilege log entry. The City shall coordinate the submission of materials with Courtroom Deputy Susan Imbriani, who may be reached at (510) 637-3525. The City shall ensure that the court receives the materials by no later than 7 days from the date of this order. The court may compel production of these materials if the City fails to comply with any of the foregoing. If the City does not make arrangements to retrieve the materials after the court has completed its *in camera* review, the court will dispose of the materials.

2. First Resort's request to depose the City Attorney is denied.

3. The City's request for a protective order preventing the deposition of City Attorney Dennis Herrera is granted.

IT IS SO ORDERED.

DATE: February 14, 2014

KANDIS A. WESTMORE
United States Magistrate Judge