UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIRST RESORT, INC.,<br><br>                Plaintiff,<br><br>        vs.<br><br>DENNIS J. HERRERA, in his official capacity as City Attorney of the City of San Francisco; BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO; and THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>                Defendants. | Case No:  C 11-5534 SBA<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Dkt. 84, 86 |

Plaintiff First Resort, Inc. ("First Resort"), a pregnancy services clinic, brings a facial challenge to the constitutionality of San Francisco's Pregnancy Information Disclosure and Protection Ordinance ("Ordinance"), S.F. Admin. Code, ch. 93 §§ 93.1-93.5.  The Ordinance is aimed at ensuring that indigent women facing unexpected pregnancies are not harmed by false or misleading advertising by certain providers of pregnancy-related services that do not offer abortions or referrals for abortions.  Id. §§ 93.3(f), 93.4.  As Defendants, First Resort has named the City and County of San Francisco, the San Francisco Board of Supervisors ("Board") and the San Francisco City Attorney (collectively "the City").

The parties are presently before the Court on the parties' respective motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES First Resort's motion for summary judgment and GRANTS the City's cross-motion for summary judgment, for reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.    **BACKGROUND**

## A.    FACTUAL SUMMARY

### 1.    **First Resort**

First Resort is a non-profit corporation which operates a state-licensed community medical clinic in San Francisco.  Jt. Stmt. of Undisputed Facts in Supp. of the Cross-Mots. for Summ. J. Filed by Pls. and Defs. ("UF") 1, 32, Dkt. 88.  The clinic offers, without charge, services such as pregnancy testing, ultrasounds and counseling.  UF 2.  First Resort does not provide abortions or emergency contraception, and refuses to refer clients to other facilities for those services.  UF 9.  First Resort believes that "abortion harms the mother and father, their families, and the unborn child."  UF 8.  This belief is recited in First Resort's Articles of Incorporation, which state that its goal is to "build an abortion-free world."  UF 33.

In its online and print advertising, First Resort characterizes itself as a provider of medical care and counseling services for pregnant woman.  UF 50 & Ex. H, sub-exs. A-N.  Although First Resort opposes abortions and does not provide abortions or abortion referrals, the subject of abortions and related resources are featured prominently in its promotional materials.  For example, under the heading "Abortion Counseling," First Resort's website (http://firstresort.org) represents that "we offer abortion information, resources, and compassionate support for women facing the crucial decisions that surround unintended pregnancies and are considering abortion."  UF, Ex. H, sub-ex. A.  Another page discusses "Pregnancy Services and Abortion Services."  Id., sub-ex. G.  On the services page of that section, First Resort claims that it provides "pregnancy options counseling and many other services."  Id., sub-ex. I.  First Resort makes no mention in its website or advertising of its anti-abortion views or the fact that abortions and abortion referrals are not offered at its clinic.

First Resort's "target clients" are women who have an unplanned pregnancy, "are unsure about what they are going to do," and are considering an abortion.  UF 34(a).  To reach its target client, First Resort uses Google's Adwords, a fee-based "keyword" service.

The service ensures that when certain combinations of keywords such as "San Francisco" and "abortion" or "emergency contraception" are used in an internet search query, a link to First Resort's website appears as a paid advertisement above the search results.  UF 35, 36, 37.  First Resort considers its online advertising as a means of competing with abortion providers for the attention of online viewers.  UF 51.

To fund its operation, including the provision of free client services, First Resort relies on donations generated through its fundraising activities.  UF 4.  For fiscal year 2012, First Resort received donations exceeding $1,000,000, $300,000 of which was allocated to the clinic operations.  UF 39.  To generate donations, First Resort employees are encouraged to share client "stories" and experiences.  UF 46-47.  Members of First Resort's senior management receive enhanced compensation based on the number of new clients brought in.  UF 48.

### 2.    The Ordinance

On April 2, 2011, San Francisco Supervisor Malia Cohen introduced legislation, co-sponsored by Supervisor Scott Weiner, that eventually became the Ordinance.  UF 11. October 25, 2011, the Ordinance was presented to the Board for a vote.  Ten supervisors voted in favor of the Ordinance, while one voted against it.  UF 18 & Ex. F.  The new Ordinance was signed into law by Mayor Edwin Lee on November 3, 2011, and took effect on December 4, 2011.  UF 19.

The Ordinance amended the San Francisco Administrative Code by adding Chapter 93, which consists of sections 93.1 through 93.5, and is divided into five separate sections: (1) "Title," id. § 93.1; (2) "Findings," id. § 93.2; (3) "Definitions," id. § 93.3; (4) "Violation," id. § 93.4; and (5) "Enforcement," id. § 93.5.  According to the Findings, the impetus for the Ordinance is the concern that pregnancy clinics that oppose abortion—referred to as "crisis pregnancy centers"—have become common throughout California.  Id. § 93.2(5).  Though some centers readily acknowledge that they do not provide abortions or emergency contraception or referrals for the same, others do not—and intentionally seek to mislead women contemplating abortion into believing that their facilities offer abortion

services and unbiased counseling.  Id. § 93.2(6).  From the City's perspective, such deception is harmful, especially to indigent women facing unexpected pregnancies.  For these particular women, time is of the essence, and even a few days delay in accessing emergency contraception or abortion services can render less invasive options unavailable.  Id. § 93.2(9); see also UF 28, 29.

To address the potential false or deceptive advertising by crisis pregnancy centers, the Ordinance prohibits the use of false or misleading advertising regarding the services offered by certain of those centers.  This prohibition states as follows:

> SEC. 93.4.  VIOLATION
>
> (a)    It is unlawful for any limited services pregnancy center, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be made or disseminated before the public in the City, or to make or disseminate or cause to be made or disseminated from the City before the public anywhere, in any newspaper or other publication, or any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof which is untrue or misleading, whether by statement or omission, that the limited services pregnancy center knows or which by the exercise of reasonable care should know to be untrue or misleading.
>
> (b)    It is unlawful for any limited services pregnancy center, with intent directly or indirectly to perform pregnancy-related services (professional or otherwise), to make or disseminate or cause to be so made or disseminated any such statement identified in subsection (a) as part of a plan or scheme with the intent not to perform the services expressly or impliedly offered, as advertised.

S.F. Admin. Code § 93.4 (emphasis added).

The Ordinance distinguishes between a "pregnancy services center" and a "limited services pregnancy center."  Id. § 93.3(f), (g).  A "pregnancy services center" is defined as any facility, licensed or otherwise, whose primary purpose is to provide services to women who are or may be pregnant, that either (1) offers obstetric ultrasounds, obstetric sonograms or prenatal care to pregnant women, or (2) has the appearance of a medical facility (as determined by additional criteria).  Id. § 93.3(g).

A "limited services pregnancy center" is defined as a pregnancy services center (within the meaning of section 93.3(g)) "that does <u>not</u> directly provide or provide referrals to clients for the following services:  (1) abortions; or (2) emergency contraception."  <u>Id.</u> § 93.3(f) (emphasis added).  The prohibition against false advertising set forth in the Ordinance applies only to a "limited services pregnancy center."  <u>Id.</u> § 93.5(a).  The Ordinance expressly states, however, that it is not intended to "regulate, limit or curtail" abortion-related advocacy.  <u>Id.</u> § 93.2(10).

The Ordinance may be enforced by the San Francisco City Attorney through a civil action.  <u>Id.</u> § 93.5.  Before filing an action, the City Attorney must provide the limited services pregnancy center with written notice of the violation that must be cured within ten days.  <u>Id.</u> § 93.5(a).  If the center does not timely respond to or correct the violation, the City Attorney may file suit against the limited services pregnancy center for injunctive relief.  <u>Id.</u> § 93.5(a).  A court may order the violator, inter alia, to pay for and disseminate appropriate corrective advertising; and to post a notice indicating whether a licensed doctor, nurse or nurse practitioner is present and whether abortions, emergency contraception or abortion referrals are available.  <u>Id.</u> § 93.5(b).  The City Attorney may also seek the imposition of civil penalties "of not less than fifty dollars ($50) and not more than five hundred dollars ($500) per violation."  <u>Id.</u> § 93.5(c).[1]

### B.   PROCEDURAL HISTORY

First Resort filed the instant action against the City under 42 U.S.C. § 1983.  Compl. ¶ 1, Dkt. 1-1.  The initial Complaint presented four claims, styled as follows:  (1) First and Fourteenth Amendments – Freedom of Expression; (2) First and Fourteenth Amendments – Vagueness; (3) Fourteenth Amendment – Equal Protection; and (4) Preemption.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City moved to dismiss all claims, except the first claim for denial of freedom of expression.  Dkt. 12.  The Court granted the motion as to the second claim for vagueness and fourth claim for preemption.  As to the

---

[1] The City has not sought or threatened to enforce the Ordinance against First Resort.

1  preemption claim, the Court granted leave to amend to allege a claim that the Ordinance is

2  preempted by California's False Advertising Law, California Business and Professions

3  Code Section 17500 ("FAL" or "Section 17500").  Dkt. 24.  The Court denied the City's

4  motion as to First Resort's third claim for denial of equal protection.  Id.

5  On October 11, 2012, First Resort filed its First Amended Complaint ("FAC"), now

6  the operative pleading before the Court, which re-alleges all claims from the original

7  Complaint, except for the vagueness claim which was previously dismissed without leave

8  to amend.  Dkt. 25.  First Resort also re-alleges a claim for preemption based on Section

9  17500.  As relief, the FAC seeks injunctive and declaratory relief that the Ordinance is void

10  and cannot be enforced.  In response to the FAC, the City moved to dismiss First Resort's

11  third claim for preemption on the ground that the doctrine only applies to penal ordinances.

12  Dkt. 30.  On March 11, 2013, the Court issued its order denying the City's motion, finding

13  that the issue had not been adequately briefed.  Dkt. 40.

14  Pursuant to the Court's scheduling order, the parties have now filed their respective

15  motions for summary judgment.  Dkt. 84, 86.  The motions are fully briefed and are ripe for

16  adjudication.[2]

17  **II.**   **LEGAL STANDARD**

18  Summary judgment is appropriate if no genuine issue of material fact exists and the

19  moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex

20  Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment

21  must demonstrate that there are no genuine issues of material fact.  See Horphag v.

22  Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007).  An issue is "genuine" if the

23  evidence is such that a reasonable jury could return a verdict for the non-moving party.  See

24  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Rivera v. Philip Morris, Inc.,

25

26  [2] In support of its motion, the City filed a Request for Judicial Notice ("RJN") and
submitted exhibits in connection with the parties' Joint Statement of Undisputed Facts in
Support of the Cross-Motions for Summary Judgment ("Joint Statement").  Dkt. 87, 88.

27  First Resort has objected to certain of the exhibits attached to the RJN and Joint Statement.
Dkt. 92.  However, none of the challenged exhibits has been relied upon by the Court in

28  adjudicating the instant motions.  Therefore, those objections are overruled as moot.

395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if its resolution could affect the outcome of the action.  <u>Anderson</u>, 477 U.S. at 248; <u>Rivera</u>, 395 F.3d at 1146.  When parties submit cross-motions for summary judgment, "[e]ach motion must be considered on its own merits."  <u>Fair Hous. Council Riverside Cnty., Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001).

## III.   DISCUSSION

### A.   FIRST AMENDMENT

The First Amendment's free speech clause provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press."  U.S. Const. amend. I; <u>see</u> <u>44 Liquormart, Inc. v. Rhode Island</u>, 517 U.S. 484, 489 n.1 (1996) (noting that the First Amendment "applies to the States under the Due Process Clause of the Fourteenth Amendment.").  "As a general matter, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 65 (1983) (citation omitted).  Regulations that discriminate on the basis of content—including viewpoint—are subject to strict scrutiny, <u>Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology</u>, 228 F.3d 1043, 1055 (9th Cir. 2000), meaning that the regulation "must be narrowly tailored to promote a compelling Government interest," <u>United States v. Playboy Entm't Grp., Inc.</u>, 529 U.S. 803, 813 (2000).

First Resort brings a facial challenge to the Ordinance, and contends that the Ordinance is subject to strict scrutiny on the grounds that it regulates speech on the basis of viewpoint and content, and impermissibly compels speech.  FAC ¶¶ 37-40; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 7-10, Dkt. 84.  Because First Resort is bringing a facial, as opposed to an as-applied challenge, it must show that the Ordinance is "unconstitutional in every conceivable application."  <u>Foti v. City of Menlo Park</u>, 146 F.3d 629, 635 (9th Cir. 1998).  The City's position is that the Ordinance only regulates false and misleading commercial speech, which is not protected by the First Amendment.  Alternatively, to the extent that the Ordinance is subject to First Amendment scrutiny, the City asserts that the

Ordinance passes constitutional muster.  Because the type of speech subject to regulation is a threshold issue, the Court first addresses the City's contention that the Ordinance only addresses commercial speech that is false or misleading.

"[C]ommercial speech is 'speech which does no more than propose a commercial transaction.'"  Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 422 (1993)).  Limitations on commercial speech are subject to intermediate scrutiny.  Coyote Publ'g, Inc. v. Miller, 598 F.3d 592, 598 (9th Cir. 2010).  However, there is no First Amendment protection for commercial speech that is false or misleading.  In re R.M.J., 455 U.S. 191, 203 (1982); Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180, 1185 (9th Cir. 2001).  Because "[t]he First Amendment's concern for commercial speech is based on the informational function of advertising . . . there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."  Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York  447 U.S. 557, 563 (1980).  As a result, it is permissible to "ban forms of communication more likely to deceive the public than to inform it."  Id.; see Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading"); United States v. Schiff, 379 F.3d 621, 630 (9th Cir. 2004) ("Fraudulent commercial speech may be enjoined" without violating the First Amendment).

The City's argument entails two salient inquiries:  (1) whether the Ordinance targets commercial speech; and (2) if so, whether the speech is being targeted for being false or misleading.  Starting with the latter inquiry first, there is no dispute between the parties that only false or misleading speech is regulated under the Ordinance.  By its express terms, the Ordinance only proscribes "untrue or misleading" advertisements or statements made by a limited services pregnancy center regarding the services that it purports to offer.  S.F. Admin Code, §§ 93.4, 93.5.  However, the first inquiry, i.e., whether the speech is commercial, requires a more nuanced analysis.  More specifically, the Supreme Court has

held that speech may be "characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech." Am. Acad. of Pain Mgmt. v. Joseph, 353 F.3d 1099, 1106 (9th Cir. 2004) (citing Bolger, 463 U.S. at 66-67). While "[t]he combination of all of these characteristics . . . provides strong support for the . . . conclusion that [the communication is] properly characterized as commercial speech," Bolger, 463 U.S. at 67, it is not necessary that each of the characteristics "be present in order for speech to be commercial," id. at 67 n.14.

Here, the first two Bolger factors—whether the speech constitutes advertising and references a specific product—are not in dispute. Under the express terms of the Ordinance, only untrue or misleading advertisements or statements made by a limited services pregnancy center regarding the services that it purports to offer are prohibited. S.F. Admin Code, §§ 93.4, 93.5; see also First Resort, Inc. v. Herrera, No. C 11-5534 SBA, 2012 WL 4497799, *5 (N.D. Cal. Sept. 28, 2012) (finding that "the advertising targeted by the Ordinance specifically pertains to advertising that 'mislead[s] women contemplating abortion into believing that their facilities offer abortion services and unbiased counseling.'") (citing S.F. Admin. Code § 93.2(6)), Dkt. 24. For its part, First Resort concedes that "[t]he advertising targeted by the Ordinance is speech offering free counseling and related prenatal care." Id.[3] (emphasis added). The Court therefore finds that the first two Bolger factors militate in favor of finding that the Ordinance only applies to commercial speech.

The parties' disagreement centers on the third Bolger factor: Whether the speaker has an economic motivation for engaging in the speech. First Resort argues that "its advertising is not commercial speech because it does not engage in economic transactions with its clients and has no economic motive for its communications with clients." Pl.'s

---

[3] Similarly, First Resort acknowledges in its opposition that "licensed facilities such as First Resort are already subject to numerous generally applicable regulations," including California Business & Professions Code § 651, which regulates "false advertising by licensed medical facilities." Pl.'s Opp'n at 13.

1  Opp'n at 8, Dkt. 91.  As an initial matter, First Resort's argument is germane to an as-

2  applied challenge, as opposed to a facial challenge.  "An as-applied challenge contends that

3  the law is unconstitutional as applied to the litigant's particular speech activity, even though

4  the law may be capable of valid application to others."  Foti, 146 F.3d at 635.  In contrast,

5  in a facial challenge, which is the only challenge raised in this action, the plaintiff must

6  show that the challenged law or regulation is unconstitutional in all of its applications, not

7  just those affecting it individually.  See Lopez-Valenzuela v. Arpaio, 770 F.3d 772, 780

8  (9th Cir. 2014).  Accordingly, even if the Ordinance targets non-commercial speech when

9  applied to First Resort, that would not ipso facto demonstrate that it does so in all

10  circumstances—as required in a facial challenge.  See Desert Outdoor Advertising, Inc. v.

11  City of Oakland, 506 F.3d 798, 805 (9th Cir. 2007) ("a 'successful as-applied challenge

12  does not render the law itself invalid but only the particular application of the law.'")

13  (citation omitted).[4]

14       The above notwithstanding, the fact that First Resort does not charge a fee for its

15  services is not dispositive of whether its advertising is economically-motivated.  Rather, an

16  assessment of economic motivation requires that the communication be viewed in context.

17  Greater Baltimore Cntr. for Pregnancy Concerns, Inc. v. Mayor and City Council of

18  Baltimore, 721 F.3d 264, 285-86 (4th Cir. 2013) (en banc).  In Greater Baltimore Center for

19  Pregnancy Concerns, the Fourth Circuit reversed a district court decision that permanently

20  enjoined the enforcement of a City of Baltimore ordinance requiring limited-service

21  pregnancy centers to post disclaimers that they do not provide or make referrals for

22  abortions or certain birth-control services.  In particular, the court criticized the district

23  court's conclusory determination that the speech regulated by the ordinance was political

24  and religious, as opposed to commercial, in nature.  Id. at 285.  The court explained that the

25  question of whether the speech subject to regulation is commercial in nature must take into

26  account the context of such speech.  Id. at 286.  In reaching its decision, the court found

27  ───────────────

28  [4] First Resort has not alleged, nor may it bring, an as applied challenge because the Ordinance has never been applied to First Resort.

instructive the Supreme Court of North Dakota's decision in <u>Fargo Women's Health Organization, Inc. v. Larson</u>, 381 N.W.2d 176 (1986) ("<u>Larson</u>").

In <u>Larson</u>, an abortion clinic filed an action against a "pro-life" pregnancy clinic (i.e., the "Help Clinic"), accusing it of engaging in "false and deceptive advertising and related activity [that] misleads persons into believing that abortions are conducted at the clinic with the intent of deceptively luring those persons to the clinic to unwittingly receive anti-abortion propaganda."  381 N.W.2d at 177.  Upon motion of the plaintiff, the trial court preliminarily enjoined the Help Clinic from engaging in such practices.  <u>Id.</u>  On appeal, the Help Clinic argued that the injunction amounted to a prior restraint in violation of the First Amendment.  The state supreme court disagreed, and concluded that the injunction only purported to regulate false and misleading commercial speech, which does not implicate the First Amendment.  In reaching this conclusion, the court rejected the Help Clinic's claim that because it did not receive payment for the services rendered, its advertising could not be considered commercial speech.  <u>Id.</u> at 180.  The court noted that while there was evidence to the contrary, it was "not clear" to what extent the Help Clinic received compensation for its services.  <u>Id.</u>  Nonetheless, the court explained that whether or not monies were received by the Help Clinic services was not dispositive of whether the communication involved was commercial.  Rather, the court concluded that "the Help Clinic's advertisements constitute promotional advertising of services <u>through which patronage of the clinic is solicited</u>, and in that respect constitute classic examples of commercial speech."  <u>Id.</u> at 180 (emphasis added).

Here, as in <u>Larson</u>, the record strongly supports the conclusion that First Resort's advertisements, when considered in context, are economically-motivated.  First Resort uses targeted advertising to attract "abortion-minded" women facing unplanned pregnancies to its clinic.  UF 34-37.  To reach that audience, First Resort pays to use Google's Adwords service, which ensures that First Resort's website appears in response to abortion-related search queries.  <u>Id.</u>  First Resort considers its advertising as a means of competing with abortion providers for the attention of online viewers.  UF 51.  Notably, First Resort's

ability to attract clients to its clinic is critical to its fundraising efforts—which, in turn, are necessary to First Resort's operations, including the provision of free services.  UF 39, 40, 47, 48, 49; see also Ex. H, sub-exs. O, Q, R.  In view of these undisputed facts, the Court is persuaded that, irrespective of whether First Resort receives payment for its services, its advertising is indeed economically-motivated.  As such, all Bolger factors militate in favor of finding that the Ordinance targets commercial speech.

For its part, First Resort does not dispute that it relies on advertising to draw clients to the clinic or that the ability to attract clinics bears directly on its fundraising efforts.  Rather, First Resort argues that Larson is distinguishable because it involved appellate review of a preliminary injunction, as opposed to a summary judgment order.  Pl.'s Opp'n at 10.  First Resort does not explain the legal significance of that distinction, nor is one readily apparent given that, like a summary judgment motion, a motion for preliminary injunction requires the court to assess the merits of the action.  E.g., Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunctions).  First Resort also claims that, unlike this case, the Help Clinic in Larson charged fees and accepted credit cards for its services.  That argument mischaracterizes Larson, which found that it was "not clear to what extent, if any, monies are exchanged," and that, in any event, whether or not the Help Clinic charged for its services was not "dispositive of [its] determination that the communication involved is commercial speech."  381 N.W.2d at 180.  Finally, First Resort attempts to make much of the court's disagreement with one aspect of the preliminary injunction which required that "if [the Help Clinic] uses the term abortion in its advertisements, [it must] . . . state that it does not perform abortions."  Id. at 179.  The court held that in light of other provisions of the preliminary injunction, "the additional requirement in the court's order that the Help Clinic affirmatively state that it does not perform abortions is merely redundant and unnecessary to accomplish the objective of preventing false and deceptive activity."  Id.  First Resort does not allege nor is there any evidence that the Ordinance is overbroad or internally redundant.

1  Next, First Resort asserts, in an entirely conclusory manner, that it "is not a

2  commercial speaker merely because it fundraises . . . ."  Dkt. 91, 7.  As a general matter,

3  First Resort is correct that fundraising per se is not considered commercial speech.  See

4  Schaumburg v. Citizens for Better Environment, 444 U.S. 620, 632 (1980) (holding that

5  charitable solicitation is not commercial speech because it "does more than inform private

6  economic decisions and is not primarily concerned with providing information about the

7  characteristics and costs of goods and services").  That principle, however, is inapposite to

8  this case.  It is First Resort's advertising—not its fundraising activity—that is at issue.  First

9  Resort's fundraising is germane only to the  extent that it provides context to whether First

10  Resort has an economic motivation for relying on its advertising to attract patients to the

11  clinic.

12  Equally without merit is First Resort's ancillary contention that the Ordinance is

13  subject to strict scrutiny on the ground that any commercial speech contained within First

14  Resort's advertisements are "inextricably intertwined" with protected speech.  Dkt. 91, 9.

15  Where commercial speech is inextricably intertwined with "fully protected speech," the

16  former "sheds its commercial character and becomes fully protected speech."  Dex Media,

17  696 F.3d at 958.  "[T]he inextricably intertwined test operates as a narrow exception to the

18  general principle that speech meeting the Bolger factors will be treated as commercial

19  speech."  Id.

20  First Resort contends that its advertising "has a substantial non-commercial

21  component, which is a request that a recipient of the advertising consider receiving

22  counseling at First Resort regarding pregnancy, free of charge."  Id.  Perhaps so, but the

23  Ordinance does not regulate First Resort or any other limited services pregnancy center's

24  ability to solicit clients to use services, including pregnancy counseling.  Rather, the

25  Ordinance only restricts the ability of such clinics to lure prospective clients into

26  patronizing them through the use of false or misleading advertising—which is not protected

27  under the First Amendment.  Accordingly, the Court rejects First Resorts' contention that

28  the commercial speech targeted by the Ordinance is subject to heightened scrutiny under

the First Amendment.  See United States v. Schiff, 379 F.3d 621, 630 (9th Cir. 2004)

("Because the protected and unprotected parts of the book are not inextricably intertwined,

Schiff cannot use the protected portions of The Federal Mafia to piggy-back his fraudulent

commercial speech into full First Amendment protection.").[5]

At bottom, the Court concludes that the Ordinance only restricts false and

misleading commercial speech, which is not protected by the First Amendment.  That aside,

First Resort has otherwise failed to show that the Ordinance violates the First Amendment

in "every conceivable application."  Foti, 146 F.3d at 635.  Summary judgment is therefore

granted in First Resort's first claim in favor of the City.

### B.   EQUAL PROTECTION

"The Equal Protection Clause . . . is essentially a direction that all persons similarly

situated should be treated alike."  City of Cleburne v. Cleburne Living Cntr., Inc., 473 U.S.

432, 439 (1985).  First Resort's equal protection claim is based on the same theory as its

First Amendment claim; to wit, the Ordinance infringes on its fundamental right to freedom

of expression because it regulates speech depending on whether a clinic provides abortions.

See FAC ¶¶ 44, 3(a); Pl.'s Mot. at 20.  However, the Court's determination that the

Ordinance does not violate the First Amendment forecloses First Resort's claim under the

Equal Protection Clause.  City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986)

("respondents can fare no better under the Equal Protection Clause than under the First

Amendment itself"); see also Dariano v. Morgan Hill Unified School Dist., 767 F.3d 764,

780 (9th Cir. 2014) ("Where plaintiffs allege violations of the Equal Protection Clause

---

[5] Because false or misleading speech is not protected by the First Amendment, First
Resort's contentions that the Ordinance constitutes content and viewpoint discrimination
and compels speech are moot.  Nonetheless, even if the First Amendment were germane,
there is no merit to these claims.  The applicability of the Ordinance is dependent upon the
services offered by a clinic, not the particular views espoused or held by the clinic.  Indeed,
as the City persuasively points out, there are potentially a number of reasons that a
pregnancy services that a clinic may choose not to offer abortions that are completely
unrelated to its views on abortion—such as financial or logistical reasons.  Nor does the
Ordinance compel speech by First Resort or any other limited services pregnancy clinic—
both remain free to express any views it may have to the public or its clients.

relating to expressive conduct, we employ 'essentially the same' analysis as we would in a case alleging only content or viewpoint discrimination under the First Amendment.").

First Resort does not directly address the preclusive effect of the Court's ruling on its First Amendment claim with respect to its equal protection claim.  Instead, First Resort argues that the Ordinance "discriminates and burdens the exercise of [its] right of conscience," which provides "an independent basis to apply strict scrutiny."  Pl.'s Opp'n at 19.  This claim is not alleged in the FAC, which unequivocally identifies the fundamental right at issue as First Resort's freedom of speech, not its right of conscience.  See FAC ¶¶ 3, 4, 21, 22, 24, 26, 30, 38-40.  Since the FAC does not allege an equal protection claim premised on the denial of First Resort's right of conscience, said claim is not properly before the court and need not be considered on a motion for summary judgment.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) ("[A]dding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability.") (internal citations and quotations omitted).[6]

Even if the FAC had alleged an equal protection violation based on the right of conscience, First Resort has failed to demonstrate the merits of such a claim.  In general, the right of conscience is premised on the notion that the government may not compel persons to profess a belief or disbelief in any particular religion, or support a practice with which they do not agree.  See Torcaso v. Watkins, 367 U.S. 488, 495 (1961).  Despite First Resort's bald assertions to the contrary, the Ordinance does not compel or coerce First Resort to adopt or support any particular practice or belief relating to abortion.  Under the Ordinance, First Resort remains free to advocate any religious or other views it desires. S.F. Admin. Code § 93.2(10).  The only restriction facing First Resort and other limited services pregnancy centers is that they cannot mislead or defraud the public regarding the

---

[6] The deadline to amend the pleadings expired on April 25, 2013, Dkt. 44 at 1, and First Resort has not shown good cause to amend the pleadings at this juncture, see Fed. R. Civ. P. 16(b)(4), Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609-10 (9th Cir. 1992).

types of services they purport to offer.  That restriction—which First Resort concedes is permissible—in no way impinges on its professed right of conscience.  The Court therefore finds that the City is entitled to summary judgment on First Resort's second claim for denial of equal protection.

### C.   PREEMPTION

First Resort alleges that the Ordinance is preempted by Section 17500 on the grounds that they are "nearly identical and seek to regulate the exact same conduct—false and misleading advertising."  Pl.'s Mot. at 23; Pl.'s Reply at 14, Dkt. 101.  Under California law, a city or county may enact and enforce its own ordinances and regulations, provided that they do not "conflict" with state law.  Cal. Const., art. XI, § 7.  However, "[i]nsofar as a local regulation conflicts with state law, it is preempted and invalid."  Save the Plastic Bag Coalition v. City and Cnty. of San Francisco, 222 Cal.App.4th 863, 883 (2013) (internal quotations and citations omitted).  "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption."  Big Creek Lumber Co. v. Cnty of Santa Cruz, 38 Cal.4th 1139, 1149 (2006).  Absent a clear indication of legislative intent to preempt, courts presume that local regulation in areas of traditional local concern is not preempted by state law.  Id.  Whether a local ordinance is preempted by a state statute presents a question of law.  Id.

"A conflict causing preemption by state law can occur in three different ways:  the local ordinance (1) duplicates state law; (2) contradicts state law; or (3) enters an area or field fully occupied by state law."  Conejo Wellness Cntr., Inc. v. City of Agoura Hills, 214 Cal.App.4th 1534, 1552 (2013).  Under California law, "[l]ocal legislation is 'duplicative' of general law when it is coextensive herewith."  Sherwin-Williams Co. v. City of Los Angeles, 4 Cal.4th 893, 898 (1993) (citing In re Portnoy, 21 Cal.2d 237, 240 (1942)).  A local ordinance is coextensive with a state law when it criminalizes "precisely the same acts."  Great W. Shows, Inc. v. Cnty. of Los Angeles, 27 Cal.4th 853, 865 (2002) (holding that a local gun ordinance making the sale of firearms on county property a misdemeanor was not preempted by a state law prohibiting the sale of assault weapons and unsafe

handguns, finding that "the Ordinance does not criminalize precisely the same acts which are prohibited by statute") (internal quotations, ellipses and citation omitted).

As a general matter, it is true that both the Ordinance and Section 17500 regulate false and misleading advertising. Despite that overlap, First Resort has failed to establish, in the first instance, that the rationale underlying duplication preemption justifies its application to this case. In Fireman's Fund Ins. Co. v. City of Lodi, California, 302 F.3d 928 (9th Cir. 2002) ("Fireman's Fund"), the Ninth Circuit held that the doctrine was inapplicable to a local civil ordinance known as the Comprehensive Municipal Environmental Response and Liability Ordinance ("MERLO"). In finding the doctrine inapplicable, the court explained as follows:

> California courts have largely confined the duplication prong of the state preemption test to penal ordinances. Baldwin v. County of Tehama, 31 Cal.App.4th 166, 36 Cal.Rptr.2d 886, 894 (1994). The "reason that a conflict with the general laws under article XI, section 7 of the state Constitution is said to exist where an ordinance duplicates state law is that a conviction under the ordinance will operate to bar prosecution under state law for the same offense." Cohen v. Bd. of Supervisors, 40 Cal.3d 277, 219 Cal.Rptr. 467, 475 n.12, 707 P.2d 840 (1985). No such situation exists here. Furthermore, California courts find preemption by duplication only where the ordinance is "coextensive with state law." Suter v. City of Lafayette, 57 Cal.App.4th 1109, 67 Cal.Rptr.2d 420, 428 (1997). MERLO treats the same subject as covered by state hazardous waste laws. It is however hardly co-extensive with HSAA. We find no preemption by duplication.

Id. at 956 (emphasis added).

In the instant case, the Ordinance is civil as opposed to penal in nature, and therefore, obviously does not "criminalize" the same conduct as the FAL. Id. Nor has First Resort shown that enforcement of the Ordinance would conflict with or preclude an action under state law. See Eller Media Co. v. City of Oakland, No. C 98-2237 FMS, 1998 WL 827426, *4 (N.D. Cal. Nov. 25, 1998) ("The Ordinance and [California Business & Professions Code] § 25664 are plainly not duplicative. . . . Simultaneous enforcement of the state and local provisions will not generate inescapable jurisdictional conflicts."). Instead, First Resort counters that duplication preemption has, in fact, been applied to civil statutes

and that an overlap between the local ordinance and state statute, standing alone, is sufficient for purposes of preemption.  Although it is true that a few published state decisions have applied duplication preemption to civil ordinances, none of the cases cited by First Resort is controlling and the Court finds them to be otherwise inapplicable to the instant action.

In Sequoia Park Associates v. County of Sonoma, 176 Cal.App.4th 1270 (2009) ("Sequoia"), the California Court of Appeal held that a county ordinance governing mobilehome conversions was expressly and impliedly preempted by an analogous state statute.  Id. at 1292-93.  As part of its implied preemption analysis, the court stated that the ordinance was "plainly duplicative" of the state statute at issue with respect to the requirements for a mobilehome conversion, which was problematic because the local provision "mandates what the state law forbids."  Id. at 1299.[7]  Here, First Resort does not argue that the Ordinance imposes requirements on limited services pregnancy centers that are contrary to those imposed by Section 17500.  Pl.'s Mot. at 23.  Instead, First Resort worries that "[o]ther cities will likely follow suit creating a dizzying array of ordinances using the text of Section 17500, but with varying enforcement procedures, relating to alleged false advertising."  Id.  Setting aside the speculative nature of its argument, the possibility that other cities may enact conflicting ordinances has no bearing on whether the Ordinance in dispute conflicts with Section 17500.

First Resort's citation to Mobilepark West Homeowners Association v. Escondido Mobilepark West, 35 Cal.App.4th 32 (1995) ("Mobilepark West") fares no better.  In that case, the California Court of Appeal, as an alternative basis for invalidating a local mobile home rent control ordinance, applied the doctrine of field preemption—not duplication preemption.  Id. at 45.  In the course of its analysis, the court noted that "[i]t is necessary to compare the terms of Civil Code section 798.17 to the terms of ordinance No. 91-19 to

---

[7] Sequoia did not address the rationale underlying duplication preemption, which, as explained by both the California Supreme Court and the Ninth Circuit, derives from double jeopardy concerns.  See Fireman's Fund Ins. Co., 302 F.3d at 956 (citing Cohen, 40 Cal. 3d at 292 n.12).

1  determine whether the ordinance invades a field fully occupied by state law." Id.  It was in

2  that context that the court noted that some of the provisions of the local ordinance

3  duplicated and imposed requirements beyond those specified by state law.  Id. at 47.  The

4  court did not—as First Resort wrongly suggests—predicate its analysis on duplication

5  preemption, and no subsequent published decision has cited Mobilepark West on that basis.

6  Finally, in Korean-American Legal Advocacy Foundation v. City of Los Angeles,

7  23 Cal.App.4th 376 (1994), the court considered whether ordinances governing the sale of

8  alcoholic beverages were duplicative of and preempted by California's Alcoholic Beverage

9  Control Act.  Id. at 390-91.  In finding that they were not, the court acknowledged the local

10  and state provisions overlapped, but ultimately highlighted the fact that the procedures

11  under each statute were sufficiently different such that "the specific interests and the

12  jurisdiction of each do not conflict."  Id. at 391.  Thus, Korean-American Legal Advocacy

13  Foundation teaches that even in rare case where duplication preemption has been applied to

14  civil ordinances, the salient question is not limited to solely whether the local and state

15  provisions overlap, but whether the enforcement of the ordinance would interfere with

16  enforcement of the state statute.  First Resort has made no such showing in this case.

17  Even if the doctrine of duplication preemption were applicable, the Court is

18  unpersuaded that the Ordinance is preempted by Section 17500.  Though the Ordinance is

19  no doubt similar to Section 17500, First Resort has not shown its enforcement would

20  interfere or conflict with state law.  Nor has First Resort demonstrated that the Ordinance

21  proscribes "precisely the same acts" as Section 17500.  "A claim for false advertising

22  [under Section 17500] requires proof that the defendant, in connection with the sale of a

23  product or service, made an untrue or misleading statement regarding the product or

24  service."  Nagel v. Twin Labs., Inc., 109 Cal.App.4th 39, 51 (2003) (emphasis added).  In

25  contrast, the Ordinance regulates advertising related to the proposed "performance" of

26  services by a limited services pregnancy center.  S.F. Admin. Code § 93.4(a), (b).  Thus, the

27  Ordinance is broader than Section 17500 in that it reaches false advertising offered in

28  connection with the performance of a limited services pregnancy provider's services,

irrespective of whether those services are offered for sale.  Tellingly, First Resort fails to address this critical, textual distinction in any of its papers.

In sum, the Court finds that Section 17500 does not preempt the Ordinance.  The Ordinance does not criminalize false advertising and its enforcement does not interfere or conflict with an enforcement action under the FAL.  The Court therefore GRANTS summary judgment in favor of the City on First Resort's third claim for preemption.

## IV.  **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      First Resort's Motion for Summary Judgment is DENIED and the City's Cross-Motion for Summary Judgment is GRANTED.

2.      Judgment shall be entered in favor of the City.  The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated:  2/20/15

SAUNDRA BROWN ARMSTRONG
United States District Judge